## John English v. Elias Caldwell.

*Evidence : Rulings that do not prejudice.* In this action of replevin for a horse, the admission of the question to the plaintiff, as to what he did with the horse, and whether he had parted with or sold it, referring to what he had done with the horse after he had replevied it, is held to be a ruling that could not have prejudiced the defendant, and that, therefore, cannot be treated as error.

*Evidence.* In such an action, where the plaintiff claims that defendant took his horse without leave, while he was trying defendant's horse in view of a trade, and the defendant insists that a trade had been completed before he took away plaintiff's horse, evidence is admissible on the part of the plaintiff to prove an unsuccessful search and inquiry for the horse after defendant took it away, as tending to show that defendant had secreted it or kept it out of the way, and that he was conscious an absolute trade had not in fact been made, as he afterwards claimed, and that he had obtained no right to the horse or its posses· sion.

*Replevin : Detention : Damages.* Whether damages are allowable in replevin for detention of the property after the writ issues and before the property is found and taken on the writ:—*Quære ?*

*Evidence: Damages : Rulings that do not prejudice.* But evidence of the value of the use of the property during such period could not have prejudiced the defendant in a case where only ten cents, or merely nominal damages, were allowed for the detention, whether strictly admissible or not.

*Evidence : Res inter alios.* In such an action the record of a criminal prosecution of defendant upon the complaint of the plaintiff, together with an entry in the minutes of the justice before whom it was prosecuted, that such prosecution was willful and malicious and without cause, is held not admissible ; it was· *res inter alios.*

*Evidence.* Evidence of a compromise of defendant's claim for damages for false imprisonment in such criminal prosecution is irrelevant to the issue of the rights of the respective parties to the horse in question in such replevin suit.

*Evidence : Impeachment : Statements.* It is not admissible for purposes of impeachment, to prove, without having laid the foundation for it by question to

him while on the stand, that the plaintiff had stated out of court that he had testified incorrectly in another proceeding for the purpose of getting back the horse for which the present suit was brought.

*Charge to the jury: Presumptions.* Where the record contains only that portion of the charge to the jury upon which error is alleged, it will be presumed that the charge, upon all the hypotheses warranted by the evidence, was correct and satisfactory, except the portion set forth in the record, and to which exception is specifically taken.

*Charge to the jury: Hypotheses: Rulings that do not prejudice.* In an action where the parties proceed upon distinct hypotheses of their relations to each other, which their evidence respectively tends to support, a charge to the jury which, while properly presenting the case upon each of these, also submits for their consideration, in language accurate in itself, an hypothesis different from either, and not strictly supported by the evidence, but more favorable to the defendant than the case properly warranted, is not an error of which such defendant will be heard to complain after a verdict which in legal effect negatived such hypothesis, as well as that of the defendant himself.

*Heard July 22. Decided October 20.*

Error to Kalamazoo Circuit.

*N. H. Stewart* and *Edwards & Sherwood,* for plaintiff in error.

*Balch & Howard,* for defendant in error.

CHRISTIANCY, J.

This was an action of replevin, brought by Caldwell against English, for a horse. Caldwell claimed on the trial, and introduced evidence tending to show, that English proposed to trade horses with him, and that he (Caldwell) in reply to this proposition, said he would hitch up English's horse and try him, and if, after such trial, the horse suited him, he would trade, to which English assented; that Caldwell then hitched up the horse to try him, as agreed, and in the meantime put his own horse in the barn of a hotel in Kalamazoo, without giving English any right to take or meddle with him at all; that he (Caldwell) drove the horse of English a short distance to try him, when he discovered that the horse was wind broken, and he immediately returned with him to the barn where he had left his own horse, when he found that English had taken his (Caldwell's) horse and left; that he (Caldwell) then left

English's horse in the barn and went in search of, but was unable to find him, or the horse he had taken away; upon which he sued out this writ. Plaintiff's evidence also tended to show that English had kept the horse secreted for a while, and until after he sold him. English, on the other hand, claimed on the trial, and introduced evidence tending to show, that there was an absolute trade of the horses made at the barn, and that the parties then mutually exchanged possession of the horses, before English took the horse got from Caldwell away. English also introduced some evidence tending to show that he had not kept out of the way, or kept the horse concealed. It appeared, however, that the officer had not been able to find the horse until the 25th of January following,—English having in the meantime, within a few days after he took the horse, sold him to one Colman, and the latter sold him to one Sutherland.

This evidence all went to the jury, who found for the plaintiff, Caldwell, and assessed his damages for detention at ten cents. The case comes here upon writ of error and certain exceptions to the admission and exclusion of evidence and the charge of the court.

The first error assigned is that Caldwell was allowed to answer the question, what he did with the horse, and whether he had parted with or sold him, and he answered that he sold him. As this evidently, as we think from the context, refers to what he had done with the horse after he had replevied him in this suit, we cannot see how, by any possibility, it could have prejudiced the plaintiff in error, and we cannot, therefore, treat it as error.

It is next objected that the witnesses for the plaintiff below were allowed to state what inquiry and search they made for the horse after he had been taken away by defendant. But as this tended to show that the defendant had secreted or kept the horse out of the way, it thereby also had some tendency to show that defendant was conscious that the parties had not in fact made such absolute trade

as he afterwards claimed to have made, and that he knew he had obtained no right to the horse, or its possession; and, in this view, we think it was clearly admissible, as tending to show the nature of the transaction which the defendant set up as an exchange.

Several errors are assigned for the admission of evidence tending to show the value of the use of the horse from the time the defendant took him until it was obtained upon the writ of replevin. For myself, I am inclined to think this evidence was admissible as showing damages for detention, though most of the time was after the issuing of the writ, but before the horse was found and replevied. It is difficult to see how the plaintiff could be compensated for these damages in any other way. But we need not decide this point, as the jury found only ten cents damages, in other words, merely nominal damages; and it is therefore clear that defendant below was not prejudiced by the evidence, whether strictly admissible or not.

The defendant below testified that these parties had a suit before a justice; that he, defendant, was arrested shortly after what he calls the exchange of the horses, and taken before the justice; that he saw Caldwell about ten minutes after the trial, and told him he was going to prosecute him for false imprisonment; that Caldwell said if he would not, he would make it all right, and then offered him twenty dollars; said he had not the money then, but would have it after awhile. Objection was then made on the part of the plaintiff to this testimony as inadmissible and irrelevant. The record then proceeds as follows: "*Mr. Sherwood*" [attorney for defendant below]:—"I propose to show that he had made this proposition to him, and that he was going to wait, and that he would see him again; wait for him to get ready to make proper compensation for the false imprisonment, and that instead of this man English going down there, his business going down there, to make some compromise with him about this horse trade, that he was there for another and entirely different pur-

pose." [What this means, or if it means any thing, what bearing it could have upon the case, or any evidence given in the case up to that time, there is nothing in the record to show; and, therefore, no error in refusing the offer. But the record proceeds :] "Objection sustained, and counsel for defendant excepted.

"*Mr. Sherwood:*—I now propose to show " [by the defendant who was on the stand] "that in that conversation at the Sheridan house, Mr. Caldwell told him that what he had testified to over here in the suit was not correct,—was not as it should be; that he had so testified because he thought he could get his own horse back." [It is evident that this must have been intended to refer to a conversation after the suit before the justice. But there is not in the record a word of evidence of any conversation ever had between the parties at the Sheridan House, consequently the record does not show any thing to support a question of this kind to the witness, as one calculated to impeach the credibility of the plaintiff (who had testified) as a witness; and if it could have been rendered admissible for this purpose at all, there is certainly no other ground upon which the inquiry could have been admissible. But the record proceeds:] "Objected to by plaintiff's counsel; objection sustained, and counsel for defendant excepted.

" *Witness:*—I went to Galesburg subsequent to these transactions; I went over there to see Mr. Caldwell; I was going to prosecute Caldwell for false imprisonment; and I went there to settle up the matter with him.    He said he would give me the black horse" [not the horse in suit] " and an open-faced watch, if I would settle with him ; I told him I would take it. I then took the watch.

" *Mr. Sherwood:*—I offer the docket of that criminal prosecution for the purpose of showing the facts which I have stated to the jury; that this man was prosecuted on the complaint of Mr. Caldwell, and that an examination was had, and that he was discharged on that examination.; that the court entered in his minutes that the prosecution

was a willful and malicious prosecution without cause, and ordered the complaining witness, Mr. Caldwell, to pay the costs. * *

"Objected to as irrelevant. Objection sustained, and counsel for defendant excepted."

I see no error in these rulings of the court. The record in the criminal prosecution was no evidence against the plaintiff' in this case. It was between different parties. The compromise offered to be shown was only of the defendant's claim for damages for false imprisonment in that prosecution, and had no bearing upon the right of either party to the horse in question in this replevin suit.

The following portion of the charge, which is the only portion of it given in the record, is excepted to as erroneous.

"Suppose, for instance, that one party takes a horse upon trial, and leaves another while he is trying it, in the simple custody of the person with whom he talks of trading; then, of course, the person in whose custody he leaves the horse is rightly in possession of the horse; but if the person in whose custody the horse is so left, should attempt to remove the horse from the place where it was left, exercise acts of ownership over it himself inconsistent with that of a mere bailee, then he would be a trespasser, and no demand would be necessary to be made upon him at all; otherwise there would be."

It is difficult to see precisely the bearing of this portion of the charge, without seeing the balance of the charge, and how far it bore upon or explained this. It must, however, be assumed that the charge, upon all the hypotheses warranted by the evidence, was correct and satisfactory, except the portion here excepted to. Now, the only hypothesis warranted by the plaintiff's evidence, was, that there had been no trade, and that his horse was never delivered to the defendant at all, even as bailee, for a moment. The hypothesis which the jury might, from the defendant's evidence, find to be the true one, was, that the parties had traded, and that the horses exchanged had been mutually

delivered.   These were the two, and I think the only, hypotheses really involved in the case upon the evidence, and between which the jury were to decide; and we are bound to presume, in the present shape of the record, that the charge properly left the case to the jury upon these hypotheses.

But the judge, as it would seem, from abundant caution, and that the defendant might have the benefit of every view of the case the jury might possibly find from the evidence, submits the case to them also upon the hypothesis that they might find that the horse had been delivered temporarily to the defendant as a mere bailee; and then proceeds to state to the jury with strict legal accuracy the legal consequences of that relation, should it be found to exist, and the legal effect of the removal of the horse by the defendant from the place where it was left, and of his exercise of acts of ownership over the horse inconsistent with the rights of a mere bailee, viz.: to render any subsequent holding wrongful, and to dispense with the necessity of a demand and refusal before suit.

Now, though I see no evidence in the record tending to support the theory that the horse was delivered to the defendant temporarily as mere bailee, yet in submitting the case to the jury upon this, as one of the possible views the jury might take of the evidence, I can see no possible injury to result to the plaintiff in error; as it was, upon the whole, submitting the case upon one theory, among others, rather more favorable to him than the case would properly warrant.   And the jury, by their verdict, must be regarded as finding, not only that there was no absolute trade or mutual delivery of unqualified possession, but that the horse was not delivered to the defendant at all, even as a mere bailee.   I see no error in this portion of the charge, nor in any of the rulings of the court, and think the judgment of the circuit court should be affirmed, with costs.

The other Justices concurred.