Willard and others vs. Comstock and another.

---

WILLARD and others vs. COMSTOCK and another.

*October 26 — November 20, 1883.*

PLEADING: PARTIES: MUNICIPAL CORPORATIONS: EQUITY. *(1) What objections raised by general demurrer. (2, 3) When tax-payers may enjoin misappropriation of public property. (4) Laches. (5) Complete relief in equity. (6) Tender, as condition of relief.*

1. The objection that a complaint does not state any cause of action *in favor of the plaintiff* (not on the ground of his incapacity to sue or because of a misjoinder or non-joinder of parties) may be taken by a general demurrer.

2. A tax-payer of a municipal corporation may maintain an action on behalf of himself and other tax-payers to enjoin a misappropriation of the property of the corporation which will result in an increase of the burden of taxation.

3. Thus a complaint alleging that the supervisors of a county, in pursuance of a fraudulent and collusive agreement with the purchaser, have made sales and are about to make other sales of tax certificates belonging to the county, for less than their value, and that the burden of taxation will thereby be increased, states a cause of action in favor of a tax-payer suing on behalf of himself and other tax-payers, to restrain further sales.

4. Where such fraudulent agreement did not come to the knowledge of the plaintiff until just before he commenced the action, and

has not been fully carried out, the plaintiff was guilty of no *laches* which will prevent the intervention of a court of equity.

5. Having taken jurisdiction to restrain future sales, the court may also set aside the sales already made in pursuance of the same fraudulent agreement.

6. The plaintiff tax-payer, in such case, cannot be required, as a condition of relief, to tender to the purchaser the money paid upon such sales.

APPEAL from the Circuit Court for *Dane* County.

The substance of the complaint is stated in the opinion. The defendants, *Comstock* and Lincoln County, answered separately. At the trial the defendant *Comstock* objected to the introduction of any evidence under the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The objection was sustained, and from the judgment dismissing the complaint the plaintiffs appealed.

For the appellants there was a brief by *Silverthorn & Hurley* and *Cottrill & Hanson*, and oral argument by *Mr. Hurley* and *Mr. Cottrill.* They argued, among other things: 1. The general demurrer does not raise the question of the plaintiffs' capacity to sue. An objection on that ground, if not taken specifically, is waived. *Moir v. Dodson,* 14 Wis., 281; *Manseau v. Mueller,* 45 id., 432; *State ex rel. v. Tuttle,* 53 id., 52; *Sheel v. Appleton,* 49 id., 127; *Nelson v. Eaton,* 7 Abb. Pr., 306. 2. A tax-payer, under the circumstances, may sue; citing, besides the cases cited in the opinion: *Bound v. Wis. Cen. R. R. Co.,* 45 Wis., 566; *Judd v. Dyke,* 30 Minn., 380. 3. The tax certificates were trust funds under control of the county board as trustees for the tax-payers, their *cestuis que trustent. People v. Ingersoll,* 58 N. Y., 21; *Lawson v. Schnellen,* 33 Wis., 292. 4. The trustees could not squander this trust property or deal with it for their personal benefit; and their so doing avoided the sales. *Oconto Co. v. Hall,* 47 Wis., 208; *Stewart v. Mather,* 32 id., 344; *Walworth Co. Bank v. F. L. & T. Co.,* 16 id., 629; *U.*

*B. Church v. Vandusen,* 37 id., 54; *Pickett v. School District,* 25 id., 551; *Cook v. Berlin W. M. Co.,* 43 id., 433; *People v. Township Board,* 11 Mich., 222; Bigelow on Fraud, 248. 5. This is a case of actual, not mere constructive, fraud. *Cook v. Berlin W. M. Co., supra; Pettibone v. Stevens,* 38 Am. Dec., 60; *Encking v. Simmons,* 28 Wis., 272; *Adair v. Cummin,* 48 Mich., 375; Bigelow on Fraud, 239; 1 Story's Eq. Jur., §§ 186, 188, 258, 307, 321, 328, 331, 334; 1 Perry on Trusts, sec. 171.

For the respondent there was a brief by *Hetzel & Canon,* as attorneys, and *I. C. Sloan, Wm. F. Vilas,* and *S. U. Pinney,* of counsel, and oral argument by *Mr. Vilas* and *Mr. Sloan.* They contended, *inter alia :* 1. Where the complaint states no right of action *in favor of the plaintiff,* as to him it states no cause of action, and a demurrer *ore tenus* lies. The rule is the same where no joint right of action in favor of the plaintiffs is stated, since no cause of action is stated in favor of each. *Lipperd v. Edwards,* 39 Ind., 165; *Masters v. Freeman,* 17 Ohio St., 323. In the case of an excess of defendants, any one may object that the complaint states no cause of action *as to him. Arzbacher v. Mayer,* 53 Wis., 380; *Bronson v. Markey,* id., 98; *Truesdell v. Rhodes,* 26 id., 215. The objection is not that the plaintiffs have not the legal capacity to sue. That provision applies only to general incapacity or legal disability, and not to the failure to state a cause of action in favor of the plaintiff. *Manseau v. Mueller,* 45 Wis., 430; *Vincent v. Starks,* id., 458; *Fulton Fire Ins. Co. v. Baldwin,* 37 N. Y., 648. 2. The plaintiffs cannot maintain this suit, because no distinct, individual right of their own is affected, but only a right and interest which is common to all the people of the county. *Doolittle v. Supervisors,* 18 N. Y., 157; *Roosevelt v. Draper,* 23 id., 318; *People v. Ingersoll,* 58 id., 1; *Demarest v. Wickham,* 63 id., 320; *Judd v. Fox Lake,* 28 Wis., 583; *West v. Ballard,* 32 id., 173; *Bound v. Wis. Cen. R. R. Co.,* 45 id., 543; *Mil-*

Willard and others vs. Comstock and another.

*ler v. Grandy*, 13 Mich., 540; *Cornell College v. Iowa Co.,* 32 Iowa, 520; *Newcomb v. Horton*, 18 Wis., 566; *Barnes v. Beloit*, 19 id., 93; *Howland v. Supervisors*, id., 247; *Fleming v. Mershon*, 36 Iowa, 413; *Kelly v. Chicago*, 62 Ill., 279; *Craft v. Jackson Co.*, 5 Kan., 518; *Wood v. Bangs*, 1 Dak., 180; *Kittle v. Fremont*, 1 Neb., 329; *Morgan v. Graham*, 1 Woods, 124. 3. The plaintiffs do not allege that they are the owners of any of the land included in the tax certificates sold to the defendant. 4. The complaint avers that the defendant has disposed of many of the certificates in question to others who are not made defendants. No complete adjudication can be had till the owners of those certificates. are in court. *Burhop v. Milwaukee*, 18 Wis., 431; *Burhop v. Roosevelt*, 20 id., 338; *Burhop v. Milwaukee*, 21 id., 257; *Pennoyer v. Allen*, 50 id., 308.

ORTON, J. The complaint substantially charges that the defendant *Comstock* fraudulently colluded with the chairman and other members of the board of supervisors of Lincoln county to obtain, at an exceedingly low and nominal value, the tax certificates belonging to said county, and that such corrupt and fraudulent scheme was carried into effect by the sale by the county, by resolutions of the board, of a great. number of tax certificates, worth their face, if not worth more, at twenty-five per cent. of such value, and that such fraudulent scheme comprehended all the various purchases. which were made or to be made by said *Comstock*. The first. sale was made the 31st day of January, 1880, and the last, on the 8th day of October, 1881, and a similar sale of the; tax certificates belonging to the county on the tax sale of 1882 is threatened, unless enjoined. The tax certificates were valuable property belonging to the county, and if judiciously and honestly disposed of, or deeds taken thereon to the county, would have been a valuable fund of the county, which would have greatly diminished the tax burthen of the:

taxable inhabitants thereof, but by this fraudulent sale at such inconsiderable and unreasonably small consideration such taxes will be greatly increased. It was a part of this scheme that the chairman of the board of supervisors and other supervisors should have some of the benefits of this purchase, and that no taxes should be paid, but the said lands returned delinquent from year to year, and the certificates of sale purchased at a like small sum, which would save the defendant *Comstock* and his co-conspirators from their full share of such taxation. All the various sales are alleged to be within one corrupt and fraudulent scheme to defraud the county of its valuable property, and the plaintiff *Willard* obtained knowledge of the facts just before the suit was brought. The suit was brought by *Willard* for himself, and on behalf of the property owners and tax-payers of said county, and, since it was commenced, many other persons similarly situated, and some of them the owners of the lands embraced in the certificates, have become joint party plaintiffs in the action. The defendant *Comstock* has realized about $7,000 on redemptions paid into the county treasury from the sales, and by redemption from other owners paid to himself of a large amount, and has obtained many deeds upon the certificates. The prayer is for an injunction against further sales of like character by the supervisors or county treasurer on behalf of the county; that *Comstock* be declared a trustee of the county, and be compelled to account for the proceeds and moneys derived from such certificates; and that the tax deeds be set aside, as well as all such fraudulent sales, and for further relief. The answer need not be noticed, as the complaint is alone on trial, by an objection to any evidence under it, on the ground that it does not state facts which constitute a cause of action.

The main question raised on this demurrer *ore tenus*, and the one mainly considered by the circuit court and upon which the decision was made by that court, as we are in-

formed by counsel, is whether the plaintiff, as a resident tax-payer, property owner, and voter in the county, for himself and on behalf of other tax-payers, property owners, and voters in said county, has the right to bring this suit.

It is objected that this defect, if it exists, cannot be reached by general demurrer. We do not think this objection well taken. The objection is not that the plaintiff has not capacity to sue, or that there is a misjoinder or non-joinder of parties, but that he has shown no cause of action in favor of himself, which may be reached by general demurrer. The true distinction is made by Mr. Justice Taylor in *Nevil v. Clifford*, 55 Wis., 161. After ruling that the objection of misjoinder of parties cannot be taken by general demurrer, he says: "If, therefore, a cause of action is set out in favor of *any party plaintiff*, the demurrer or objection must be overruled." The authorities cited by the learned counsel of the appellants do not apply to such an objection as is here made. In the case above referred to, the same objection made here was made on a similar demurrer *ore tenus;* and the circuit court dismissed the complaint because the plaintiff had no such interest as would entitle him to bring the suit, and that question was passed upon by this court as being under the demurrer. See, also, *Arzbacher v. Mayer*, 53 Wis., 380.

The principles in regard to the interest of the plaintiff and other tax-payers, property owners, and voters of the county, on whose behalf this suit is brought, to prevent future unjust taxation, which is likely to be occasioned by the unlawful or corrupt conduct of the supervisors, by which the property or other resources of the county will be diminished or its indebtedness increased, and in reference to the equity jurisdiction of the court to afford relief in their fullest breadth and scope, have been so long and so often recognized by this court that it is a matter of surprise that substantially the same question should again be raised. If it were not for the

distinguished ability and great eminence of the learned coun-
sel of the respondents, who insist that this case does not lie
within the principle of the cases referred to, but rather
within a class of cases in which this court has decided that
a court of equity ought not, by injunction, to arrest the ordi-
nary course of tax proceedings or interfere with the pre-
liminary duties of the taxing officers, and for the eminent
ability and usually sound rulings of the learned judge by
whom the demurrer to the complaint was sustained, I should
not hesitate to say with emphatic brevity that the matters
of this suit have long been *stare decisis* in this court. As it
is, we shall extend this opinion no further than to refer
briefly to the cases in this court where we think precisely
the same principles have been recognized. Outside of this
state the authorities may be somewhat in conflict, but we
have the authority of so able a jurist and writer as Judge
Cooley for saying that "the decided preponderance of
authority is in support of the right of the tax-payers to file
bills on their own behalf in such a case." The principle
seems to be that individual tax-payers may restrain municipal
action when it constitutes the preliminary step leading to tax-
ation, such as the contracting of a debt *ultra vires*, the allow-
ance of an illegal claim, consent to a collusive judgment, or
the misappropriation of the public moneys. The jurisdiction
is sustained on the ground that the injury would be irrepa-
rable. The misappropriation of corporate funds would not
render the tax levied to repair the waste or supply the defi-
ciency illegal. Cooley on Taxation, 548. Citizens and tax-
payers may prevent the issue and sale of void bonds by
the municipal corporation. *Delaware Co. v. McClintock*, 51
Ind., 325. The misappropriation of the public moneys forms
good ground for such an injunction by the citizen and tax-
payer, because the corporation holds its moneys for the cor-
porators, to be expended for legitimate purposes, and a
misappropriation of the funds is an injury to the tax-payer

for which no other remedy is so effectual or appropriate. When the amount thus misappropriated is subsequently needed for legitimate purposes a citizen cannot resist the necessary tax to supply the deficiency. Dillon on Mun. Corp., § 917; *New London v. Brainard*, 22 Conn., 552. In *Scofield v. Eighth School Dist.*, 27 Conn., 499, the same principle is applied to the misappropriation of the corporate *property*.

It is impossible to see any distinction between the misappropriation of the funds and of the property of the corporation. If the funds cannot be taken from the treasury and divided between the supervisors and strangers by a corrupt combination and fraudulent scheme, neither could its property be so divided, or sold to the conspirators for a grossly inadequate price. The tax-payer is liable to suffer by taxation from both causes alike. In *Mayor of Baltimore v. Gill*, 31 Md., 375, an ordinance was passed for the sale or hypothecation of a large number of shares of the capital stock of the Baltimore & Ohio Railroad Company belonging to said city. The ordinance was void as being unconstitutional. The plaintiff and other owners of property, and tax-payers in said city, brought their bill to restrain the city from such unauthorized disposition of the property of the city. This is one of the most elaborate and well-considered cases ever decided in the United States, and the whole subject was most thoroughly examined in the light of the authorities, and the bill was sustained on the ground that the tax-payers had no other remedy, and that they were directly interested in the subject matter of the suit, as being the special class damaged by such unlawful act of the corporation, which would increase the burthen of taxation upon them and all others similarly situated. It is not perceivable how this case differs in principle from the one at bar in any particular, except it be in the fact that in the case under consideration the sale and disposition of the valuable property of the

county was made, not merely without right, but by fraud and collusion between the purchaser and the officers and agents of the county, and for their joint benefit.

We have thus gone outside of our own decisions, as to some questions directly involved, which by the facts are precisely the same as in this case, but not to sustain our own authorities. It is about time that we may rely solely on the decisions of this court, where they have been many and uniform upon the same question, and for a long series of years. This court may review and overrule its previous decisions, but it is not likely to do so where its uniform decisions upon one question have for a long time become a rule of property, and especially as they are supported by the weight of authority elsewhere. To go outside may show learning and great industry in the examination of cases, but to rest the principle upon our own decisions, when they have been numerous, uniform, and consequently well considered, would show a commendable confidence in our own courts, as patriotic as it is generally deserved.

In *Peck v. School Dist.*, 21 Wis., 516, the contract for building a school-house and the leasing of ground upon which it was to be located was clearly illegal. The plaintiff on his own behalf and on behalf of other tax-payers, brought his bill to restrain the tax on account thereof, and to set aside the contract and have it declared void. This case was well considered, not only on the first hearing, but upon a rehearing, and the bill was sustained. Wherein does that case differ in principle from the one at bar? The illegal contract, which resulted or would necessarily result in the increase of taxation, is the ground of the action. The contract set aside and annulled, the tax would not be levied or enforced. The *gravamen* is the illegal contract. So, here, the ground is the fraudulent sale of the valuable property of the county, to be divided up among the defendant *Comstock* and the dishonest officers and agents of the county. If the sale stands,

an excessive taxation will be required to supply the deficiency caused by this dishonest and fraudulent diversion and conversion of the property of the county. If the sale is set aside, the threatened excessive taxation will go with it, and the plaintiffs will be relieved from just so much of an unjust burthen of taxation as the real value of the property is, which, according to this fraudulent contract, was four times in excess of the consideration to be paid. The case above referred to is distinguished by the learned chief justice from a mere injunction to restrain the sale of personal property for tax.

In *Whiting v. S. & F. du L. R. R. Co.*, 25 Wis., 167, the bill was brought by Whiting, a freeholder, tax-payer, citizen, and resident of Fond du Lac county, in his own behalf, and in behalf of all others of like interest with himself, to restrain the county authorities from issuing to the railroad company the orders of the county, on the ground of their illegality. The issuing of these orders would necessarily increase the burden of taxation, and the suit was sustained and the injunction maintained.

In *Lawson v. Schnellen*, 33 Wis., 288, complaint was filed and injunction granted, on behalf of the tax-payers of the town of Menasha, to restrain the issuing of bonds for railroad purposes. The point was made by the appellants that such a suit should have been brought by the attorney general and not by the tax-payers. On the other hand, the counsel of the respondent cited *Peck v. School Dist., supra*, and *New London v. Brainard*, 22 Conn., 552, and other like cases. Chief Justice Dixon cites in his opinion *Whiting v. S. & F. du L. R. R. Co., supra*, and *Judd v. Fox Lake*, 28 Wis., 583, as also *Phillips v. Albany*, id., 340, and sustains the bill. In the latter case, the tax-payers brought their bill to restrain the town of Albany from issuing bonds in exchange for railroad stock, and the jurisdiction was conceded. In *Judd v. Fox Lake*, *Peck v. School Dist.* and *Whiting v.*

*S. & F. du L. R. R. Co.*, were specially approved, and this case distinguished because it was asking for an injunction against the preliminary proceedings of taxation, and would suspend all proceedings to collect the taxes.

In *Roe v. Lincoln Co.*, 56 Wis., 66, a bill was filed to enjoin a sale for illegal taxes, and sustained, as being a threatened cloud upon the title, and the case of *Judd v. Fox Lake* was distinguished, and the case of *Peck v. School Dist.* approved. In a late case in this court of *Lynch v. E., L. F. & M. R'y Co.*, 57 Wis., 430, the complaint was to enjoin the delivery of the town bonds to the railroad company, by a tax-payer of the town, on account of the illegality of the contracts and proceedings, and this same question of jurisdiction was again raised, and it was again decided that the plaintiff as a tax-payer could bring such an action; Mr. Justice TAYLOR citing *Lawson v. Schnellen, Whiting v. S. & F. du L. R. R. Co., Phillips v. Albany*, and *Peck v. School Dist., supra*, as approved authority.

There are many other cases in this court in which a similar jurisdiction in equity has been sanctioned, but it is profitless to pursue the subject further. If these authorities do not establish the right of the plaintiffs to bring this action, then no possible decision except one in this identical case would justify it, for this case cannot possibly be distinguished in principle from the cases above referred to. But, at the expense of lengthening this opinion still further, I cannot forbear to cite one other and a very late case in this court, where the analogy of facts is even closer than in some already cited. In *Nevil v. Clifford, supra*, the school district board entered into an unauthorized and void contract with the Cliffords to build a school-house, and afterwards the Cliffords brought suit against the school district, and by collusion with its officers obtained a judgment. The plaintiff, a tax-payer, for himself and on behalf of other tax-payers of the district, brought suit to enjoin the use of the school-

house, and the collection of any tax therefor, as illegal and void, and to set aside such judgment. The same objection was made, by demurrer *ore tenus* that the complaint did not state a cause of action, as in this case, and the objection was sustained by the circuit court. This whole subject of jurisdiction in such cases again underwent a full examination and consideration, and the complaint was sustained by the authority of *Peck v. School Dist.* and the other like cases in this court.

The last case meets the objection that the court cannot by such an action set aside the sale already made, but may enjoin future threatened mischief. It may be said, touching the objection that this sale has already been consummated, that the complaint charges that other similar sales are threatened to be made by the same fraudulent scheme and arrangement to the defendant *Comstock*, and an injunction is asked against such, and the court, having obtained jurisdiction for such purpose, may hold the case to set aside the fraudulent sales which have already been made in carrying out the same corrupt scheme.

The objection is taken that there has been too much laches and delay for a court of equity at this late day to intervene. According to the complaint there has been no delay, and the complaint must be taken as true. (1) It is stated therein that this fraudulent scheme did not come to the knowledge of the plaintiff until just before the suit was brought; and (2) that the scheme has not yet been fully carried out, and the fraud consummated, which contemplated still other and future sales of certificates belonging to the county at like unreasonably low prices.

It is objected that the plaintiff, as a mere tax-payer, has no such interest as to entitle him to bring this suit when the grievance concerns the entire public and the state, and that it is the business of the state, through the attorney general, to take proper legal action to restrain municipal officers

from violating their trusts. In *Lawson v. Schnellen, supra,* it is said by Chief Justice DIXON: "If the tax-payers and real parties in interest have not the remedy by injunction, *then there exists none whatever for the wrong.*" In *Mayor of Baltimore v. Gill, supra,* the same point was made, that the attorney general should have filed the bill, and it was held that the state had no interest in it, and that the tax-payers were the only proper parties plaintiff. In *Colburn v. Chattanooga,* 17 Am. Law Reg., 191, it was held that the state had no interest in such a suit, but only the tax-payers, and the case of *Newmeyer v. M. & M. R. R. Co.,* 52 Mo., 81, is to the same effect.

It is objected that no tender back of the moneys received by the supervisors has been made. Whether the county has ever received any such moneys as the product of such a fraudulent transaction of the supervisors, *quære?* See *Smith v. Supervisors,* 44 Wis., 686. If the county has received the moneys, it can be ordered to restore them as a condition of relief, for the county is before the court as party defendant. The supervisors represent the county and no others can; and if the supervisors become a party to fraudulent transactions with strangers, by which the property or funds of the county have been disposed of for a grossly inadequate consideration, and that consideration has been paid, how, possibly, can the tax-payers be required to tender it back, when they have never received it, as a ground of relief? If this consideration can be reached by a court of equity, which generally leaves the parties to a fraud where it finds them, its restoration may be decreed in this suit. No tender is necessary in a case of an unlawful or fraudulent sale. *Kling v. Childs,* 30 Mich., 366. The principle that the funds and property of the county are a trust in the hands and under the control of the board of supervisors, is denied with considerable emphasis, and that the tax-paying inhabitants are the *cestui que trusts* or beneficiaries. Why not so? Who are interested in

such fund or property if such inhabitants are not? It may be that all the relations of a trust are not present, but that this is a trust committed by the law to the officers of the county, and that they are responsible to account for their trusteeship to the county, or to those who constitute the county, and the only ones interested, there can be no doubt.

Finally, according to the facts alleged in the complaint, and which for the present purpose must be taken as true, this was one of the most outrageous cases of fraud in which public officers participated, as well as in the fruits of it, ever brought into court. If there is no remedy, and if this is not the remedy (which is the same thing, for there is no other), then one of the greatest wrongs ever perpetrated by fraudulent collusion with the officers of the county, by which its unsuspecting tax-payers have had their burthen of taxation increased at least threefold, in consequence of the valuable property of the county having been thus despoiled and sacrificed in violation of the maxim of civil government, *is without a remedy.* Take any case where it is possible for the supervisors to sell and dispose of the property of the county and confer a title, unless by *ultra vires* or fraud. Suppose they sell the court-house property by fraudulent collusion with the purchaser, reserving an interest in the property, for one fourth of its market value, or any other valuable property of the county, upon the same terms and by the same fraud, is there no remedy? They may be proceeded against criminally, but that would not restore the property. A new court-house must be built, and that by greatly increased taxation to supply the deficiency in the means and funds of the county occasioned by such an outrageously fraudulent transaction. Is there no remedy? Are the hands of the victimized tax-payers tied by technical rules, when they are really the only persons injured or interested, so that they have no standing in court? The idea is simply preposterous, and that is really all that ought to be said about

it. We do not think there is the slightest question but that the tax-payers of Lincoln county have the right to bring this suit, but that they are the only proper parties plaintiff in such a case; or but that, if the facts stated in the complaint are sustained by proof, they are entitled to the relief prayed; or but that they have been reasonably diligent in bringing their suit. In simple justice to Mr. Hurley, the eminent counsel of the appellants, we may well say that he presented his side of the case with great ability and zeal.

The demurrer *ore tenus* should have been overruled.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.