PALACIOS et al. v. CORBETT et· al.†
(No. 5378.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 6, 1915. Rehearing Denied Jan. 27, 1915.)

1. COMMON LAW (§ 12*)—ADOPTION — "COMMON LAW OF ENGLAND" — WHAT CONSTITUTES.

The "common law of England," referred to in Rev. St. art. 5492, and which was declared adopted by the state of Texas, means the common law as declared by the courts of the different states of the United States.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. § 10; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, First and Second Series, Common Law.]

2. RECORDS (§ 14*)—COMMON LAW.

In the absence of statutory provisions relating to the right of citizens to inspect county records, the matter is governed by the common law.

[Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. § 14.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error pending in Supreme Court.

**3. MANDAMUS (§ 82*)—RECORDS (§ 14*)—INSPECTION OF COUNTY RECORDS.**

A citizen and taxpayer of a county, who has good cause to believe there has been a misapplication of county funds, is entitled to a writ of mandamus to compel county officers to allow inspection of their books to discover the misapplication, if any, though there is no absolute right of inspection given by statute; this being particularly true where the citizen is interested in the inspection because it may result in a decrease of his assessment.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 139, 177–179; Dec. Dig. § 82;* Records, Cent. Dig. §§ 13–18; Dec. Dig. § 14.*]

**4. RECORDS (§ 14*) — COUNTY RECORDS — INSPECTION.**

That Rev. St. art. 1402, declares that the finance ledger shall be kept by the county clerk and shall be at all times open to inspection, and that articles 6030, 6041, and 6042 provide for the removal of county officers for certain misconduct, does not, even in view of article 1160, by which stockholders of private corporations are given the right to examine books and records, deprive a citizen of his common-law right to inspect county records to determine whether there was a misapplication of funds.

[Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. § 14.*]

**5. RECORDS (§ 14*)—INSPECTION — MANDAMUS—DEFENSES.**

Where it appeared that county officers were in arrears for several years, the fact that the county commissioners were having an audit for one of the years is no ground for denying citizens mandamus to enable them to obtain inspection of county records to ascertain delinquencies of the previous years.

[Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. § 14.*]

**6. RECORDS (§ 14*) — COUNTY RECORDS — INSPECTION—RIGHT OF.**

Where plaintiffs expected that an inspection of county records would disclose that their assessments were too high, they had a personal interest entitling them to inspect the county records; hence mandamus could not be denied because of plaintiff's want of interest.

[Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. § 14.*]

**7. MANDAMUS (§ 82*)—COUNTY RECORDS—INSPECTION—RIGHT OF.**

There is a presumption that the county attorney will perform the duty imposed by Rev. St. art. 366, and sue for money due the county; hence, to entitle taxpayers to mandamus to obtain inspection of county records to ascertain whether there was money due the county, it need not be shown that the county attorney had agreed to institute suit for any sums which might be found owing.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 139, 177–179; Dec. Dig. § 82.*]

Appeal from District Court, Duval County; W. B. Hopkins, Judge.

Suit by R. H. Corbett and others against J. V. Palacios, as County Clerk, and others. From a judgment granting plaintiffs a writ of mandamus, defendants appeal. Affirmed.

Hicks, Hicks & Teagarden and Chas. M. Dickson, all of San Antonio, for appellants. G. C. Robinson and Dougherty & Dougherty, all of Beeville, for appellees.

MOURSUND, J. R. H. Corbett and 17 other private citizens of Duval county sued J. V. Palacios, county clerk of said county, the county treasurer, the tax collector, the county judge, the county commissioners, and the Mercantile Bank, the county depository. We take from appellants' brief the following statement of the pleadings:

"It is alleged in the petition, which was filed in the district court of said county on May 22, 1914, that plaintiffs are taxpaying citizens of Duval county, and that on or about January 30, 1914, they had employed competent auditors who were engaged in an audit of such records, books, and vouchers in order to determine the financial condition of said county for the purpose of determining whether there were any moneys due said county by any of the officers who had collected moneys belonging to the county, and whether any of the moneys of the county had been illegally retained or illegally disbursed by any of the officers charged with the disbursing of the same, and that, while such auditors were engaged in the work of auditing the said books and accounts, the commissioners' court passed an order directing the other defendant county officers to refuse to allow the plaintiffs and their auditors to further inspect such records, and that the defendants did refuse and still refuse to allow the plaintiffs and their auditors to inspect any of the public records, books, and accounts of the county of which they are custodians. It was also alleged that the plaintiffs were not prompted by motives of idle curiosity in seeking to inspect and audit said records, but desired to make extracts from the same and to make copies thereof for the purpose of a complete audit of the affairs of the county, for the reason that plaintiffs have a well-grounded belief that the finances of the county have not been faithfully administered, and that there are large sums of money due the county of Duval, and that they desire to ascertain the amounts thereof in order that the same may be recovered for Duval county. Plaintiffs then set out in detail certain alleged irregularities, collections, payments, and intermingling of various funds in order to show the necessity for such audit, and also pleaded that their auditors, in making such inspection and audit of the records, were not in any way interfering with the orderly conduct of the affairs of the defendants in their offices, and were inspecting the records during the office hours of defendants, and that it was not their intention or desire to interfere with any of the defendants in the orderly conduct of their official affairs, nor to inspect such records at any other than reasonable office hours. It was further alleged that the members of the commissioners' court 'have pretended that said court is auditing or preparing to have an audit made of the finances of the county; and plaintiffs allege that, if said court shall have any audit made of the finances of said county, said audit will not be made for the purpose of determining whether said defendants owe the county any moneys, but for the purpose of "whitewashing" the said defendants and shield them from any suit for any deficit that a competent audit of said county's finances might disclose.' It was further alleged that, if a deficit was found, the court would take no action to collect the same, and that the ordinary legal remedies were inadequate to afford the relief desired, and that they feared that the commissioners' court would fine for contempt any county officer who permitted the records under his control to be inspected by said auditors; and plaintiffs prayed for a mandamus commanding each of the defendants to permit plaintiffs or their auditors to inspect and audit all county records under their control and to get such extracts, copies, and data therefrom as they might desire, and also prayed for an injunction against the county judge and commissioners' court, restraining them from in

any way interfering with the inspection and audit of the public records of the county of whatever nature.

"Each of the defendants filed separate answers to the petition, all of which were, however, practically the same. The defendant Palacios pleaded: (a) In abatement that the plaintiffs had no right to institute suit for or on behalf of Duval county to recover any amount which might be due the county, and that that right was confided alone in the commissioners' court, and that plaintiffs, as private citizens, had no right to institute any such suit, and therefore the suit to permit them or their auditors to audit the accounts should be abated; (b) misjoinder of parties plaintiff because said petition did not disclose facts authorizing the bringing of a joint action by all the plaintiffs against this defendant; (c) a misjoinder of parties defendant because the petition showed no such common interest among defendants as would authorize the plaintiffs to prosecute a suit against defendants jointly; (d) general demurrer; (e) special exception to all matters in the petition relating to duties, responsibilities, and negligence or failure of other county officials than himself, and he asked that they be stricken out. And specially answering, defendant Palacios denied that he had refused to permit the plaintiffs to inspect any public records of which he was custodian, and denied that the county commissioners' court had passed any order directing the defendant to refuse to allow plaintiffs to inspect the records of which he was custodian, or that he had combined with the other defendants to use secretive methods in the administration of the financial affairs of Duval county, in order to render it difficult for plaintiffs to ascertain the facts in regard to disbursing the funds of the county or to deter the taxpayers from inquiring into the same, and alleged that all records under his control were then and had ever been subject to the inspection of any citizen of Duval county, and that he had never refused any of the plaintiffs the right to inspect the same at reasonable times during office hours, and that he was not in combination with any of the defendants to prevent any citizen of Duval county or plaintiffs from inspecting such records, and also specially that 'at this time all the books in his custody, relating to the finances of Duval county, are being audited by a competent accountant appointed by the commissioners' court of said county, and the same are in daily use by said auditor for the purpose of said audit and examination.'

"All the other defendants joined in the pleas of abatement and misjoinder and general and special exceptions, and filed practically the same answer as defendant Palacios, and the defendants the commissioners' court, in addition to such pleadings, alleged in their answer that many of the matters alleged in said petition were pleaded for no other object than discrediting the defendants' official acts, and they denied making any unlawful transfer of the funds or unlawful levy of taxes, or that they had combined with the other defendants to disburse funds unlawfully or to use secretive methods in administering the affairs of the county, and especially pleaded that they passed no order directing the other defendants 'to refuse to allow plaintiffs to inspect the records of Duval county, showing the financial condition thereof,' and that, as commissioners, they were charged with the duty of looking after the financial affairs of the county and the official acts of the other defendants, and that 'in pursuance thereof, and before the filing of this suit by the plaintiffs, they had employed a competent accountant to audit the financial records of the county, including all the books, reports, and documents kept or required to be kept by every county officer and the county depository, and that said accountant is now engaged in an audit of said books and records, and the same are in daily use by him for such purpose, and, in order to make said audit, said accountant needs the free and uninterrupted use of said books and accounts daily.'

"It was further alleged by the county commissioners that said audit was being made in good faith for the purpose of ascertaining whether the books and accounts were properly kept, and whether there were any moneys due the state or county which had not been paid over, and that, when the report of the auditor was completed, they (the commissioners' court) would require a strict accounting and settlement to be made by every county officer found in arrears, and they denied that they had ever refused to permit the plaintiffs to inspect any records relating to the financial affairs of the county, and that they fully recognized such right; but they admitted that they had passed an order instructing the other defendants not to permit the books under their control to be turned over to a number of nonresident strangers from another county who claimed to be acting for the plaintiffs in making an audit of said books and records; and they alleged that the plaintiffs belonged to a political faction opposed to them, and that the object of the pretended audit inaugurated by the plaintiffs was for the purpose of harassing the defendants and other officers of the county, and not with the bona fide purpose of aiding or assisting the due and orderly government of the county, nor for the purpose of recovering for the county any sum or sums of money which might be due it; and they alleged that when the audit was completed they would take such steps as would preserve all the rights of the county.

"Plaintiffs filed supplemental petiton in which they reiterated practically their allegations in the original petition, and in addition alleged that plaintiffs were interested in determining the status of the finances of the county and the disposition of the funds and taxes collected by reason of the fact that they wished this data to use in a certain suit wherein the plaintiffs sought to restrain the county collector and the commissioners' court from collecting certain taxes levied upon their property on the ground that the levies were unlawful; and they also joined issue on the question as to whether or not the right to inspect the records of the county had been denied them, and alleged that, if the books were used by an auditor appointed by the commissioners' court, nevertheless that would not interfere with the audit and examination which would be made by the auditors of the plaintiffs, and that an orderly examination could be made by both auditors concurrently, and they also joined issue with the defendants on the matters of fact alleged in defendants' answer.

"Defendants filed supplemental answer denying that the auditors of plaintiffs would not interfere with the auditor appointed by the commissioners' court, and alleging that all the books were being daily and constantly used by the auditor appointed by the commissioners' court, and that such auditor needed all the books and accounts at all times to make the audit, and that the use of the books by any other auditor at that time would interfere and hamper the auditor employed by the county, who was then engaged in making the examination of the books."

The court overruled defendants' pleas and exceptions, and upon a hearing granted the writ of mandamus against all the county officers sued, and also the injunction against the commissioners' court.

The court filed findings of fact and conclusions of law. As the findings of fact are not attacked, they are adopted by us as our findings of fact:

"Findings of Fact.

"First. I find that plaintiffs are citizens and taxpayers of Duval county, Tex., and that the defendant Palacios is county clerk of Duval county; that defendant Tobin is tax collector of said county; that the Mercantile Exchange Bank is operated and managed by the defendants A. Levy and Johanna Levy, and it is the bonded depository of Duval county and of the school fund of said county; that defendant S. H. Woods is the county judge of said county; and that he, together with the defendants Parr, Carillo, Garza, and Hinojosa, constitute the commissioners' court of said county.

"Second. I find that the plaintiffs on or about the 30th of January, 1914, employed a competent auditor for the purpose of auditing the books of Duval county with a view of determining the financial affairs of the county and the manner in which the officials charged with the collection, management, and disbursement of funds were performing their duties, and for the purpose of determining whether there were any moneys due the county by any of the officials who had collected money belonging to the county, and whether any of the moneys to the county had been retained or illegally disbursed by any of the officers charged with the disbursement of the same.

"Third. I find that the auditor so employed began to make said audit, and, while engaged in such audit, the defendant the commissioners' court passed an order forbidding any person to audit said books and directing the other defendants not to allow said auditor to further audit the books and records of the county.

"Fourth. I find that all the defendants, county officers, acting together, did refuse to permit the auditor selected by plaintiffs to further audit the said books, documents and papers showing the financial condition of the county, and still refuse to permit such audit.

"Fifth. I find that plaintiffs were not prompted by motives of idle curiosity in seeking the audit, but desired to make the same for the reason that they believed the finances of the county have not been faithfully administered, and they believed that there were certain sums of money due the county of Duval by some of the county officers, and they desired to ascertain the amount thereof in order that the same might be recovered for the county.

"Sixth. I find that the plaintiffs have sufficient evidence to justify their belief that there were certain sums of money due the county by those charged with the collection, management, and disbursement of same, and that they have sufficient evidence to justify their allegation that the books, records, and documents, relating to the financial affairs of the county, have not been fully kept in accordance with law.

"Seventh. I find that the plaintiffs will not be permitted by the county officers, through the auditor selected by them, to make an audit of the books of the county, unless the county officers are compelled to do so by a writ of mandamus, and unless the commissioners' court is restrained from interference by injunction.

"Eighth. I find that, prior to the filing of this suit, the commissioners' court of Duval county employed an auditor for the purpose of auditing the books, stubs, documents, and records showing the financial condition of said county and the manner of the handling and disbursing of the funds by all of the county officers, and that such auditor, so employed by the commissioners' court, was actually engaged in the audit of the books of the county at the time this suit was filed by the plaintiffs and at the time of this trial.

"Ninth. I find that the auditor employed by the commissioners' court was engaged in the audit of the books of the county at the time this suit was tried, and that it would take him at least two months to complete his audit of the books, documents, stubs, and records showing the financial condition of Duval county, as directed by the commissioners' court, and that he was actually engaged, at the time of this trial, in using and handling said books, in making such audit.

"Tenth. I find that the auditor selected by the plaintiffs could proceed with his audit of the books of the county without interfering with the auditor selected by the commissioners' court.

"Eleventh. I find there is evidence that the county collector of Duval county is in arrears for the years 1910, 1911, and 1912 in the sum of about $5,000, as follows: For the year 1910, $230 (about); for the year 1911, $2,200 (about); and for the year 1912, $2,600 (about).

"Twelfth. I find that the auditor employed by plaintiffs made an examination for said three years sufficient to determine the condition of the tax collector's account for said period; that he was not permitted to examine any other accounts for any other years.

"Thirteenth. I find that the county treasurer's cash books, and all other books kept by him up to the month of December, 1910, have disappeared, and that the county treasurer, and the county judge, disclaim any knowledge of their whereabouts, and say that same is unknown to them.

"Fourteenth. I find that the account kept with the county by the county depository did not distinguish between the various funds of the county, and that the jury fund, road and bridge fund, general fund, and courthouse and jail fund were kept in one account by the depository, and that checks were paid indiscriminately, without regard to any of said funds.

"Fifteenth. I find that from May, 1910, to February, 1911, no treasurer's report was recorded or approved by the commissioners' court of Duval county.

"Sixteenth. I further find that, when the May report of 1910 was filed, it showed a balance in the hands of the treasurer to the credit of different funds of Duval county to the amount of more than $8,000.

"Seventeenth. I find that the next treasurer's account, approved by the commissioners' court of Duval county in February, 1911, showed no balance brought forward from the previous report of the treasurer, and that said sum of $8,000 is not accounted for by said report.

"Eighteenth. I find that said sum was never thereafter accounted for, nor was any action ever taken thereon by the commissioners' court.

"Nineteenth. I find that there is evidence to sustain the fact that for a long period of years A. Parr, county commissioner, has drawn out funds from the county treasury in the following manner: He has drawn orders on said county treasurer, directing him to pay to various people certain sums of money, and that the treasurer would honor these orders and pay the same by check on the county depository, and that this is the usual and customary manner, and has been the custom of drawing money out of said treasury for a long period of years; and the commissioners' court would thereafter order a warrant to issue in the manner described in the next succeeding paragraph.

"Twentieth. I also find that S. H. Woods, county judge, issued orders upon the county treasurer, which were in a like manner honored by said treasurer, and that, when the commissioners' court thereafter met these orders, they would merely add and determine the aggregate of the sum ascertained, and the clerk would then be ordered to draw warrants in favor of the treasurer for such amounts, and that for the year 1913 these orders aggregated the sum of approximately $12,000.

"Twenty-First. I find that the finance ledger of Duval county had not been kept from July, 1911, until the time when plaintiffs' auditor began to audit the books of said county, and until some time after February 1, 1914, after which last-mentioned date same was brought down to date.

"Twenty-Second. I find that defendant the

Mercantile Exchange Bank, about December, 1912, placed the sum of $313.60 to the credit of the available school fund, when the said amount was a part of the permanent school fund of said county.

"Twenty-Third. 1 further find that the defendants Woods and Parr borrowed money from the Mercantile Exchange Bank, in the name of Duval county, and. that the same was credited on the treasurer's books at a time when said Mercantile Exchange Bank was the county depository of said county and the county treasury of the school fund of said county. I also find that Woods and Parr, in the name of the county, borrowed money with which to operate the county from other banks, and that said sums were repaid by the county.

"Twenty-Fourth. I find that many thousands of dollars have been drawn out of the county depository of Duval county and expended in the following manner: The county commissioners and county judge would give orders on the county treasurer depository, and these would be paid. Subsequently these orders would be placed in an envelope, and the total amount thereof stated on the outside of the envelope, and the only audit that .was made of this account, in order to prove the same, was as follows: When the commissioners' court would thereafter meet, they would add the amounts of the orders in the envelope, and, if that amount agreed with the amount stated on the back of the envelope, an order would be entered directing the county clerk to issue a warrant in favor of the county treasurer for the aggregate of these orders.

"Twenty-Fifth. I find that the defendants acted together in denying plaintiffs and their auditors the right to audit said books.

"Twenty-Sixth. I find also that plaintiffs had a personal interest in the matter, in that they had a suit pending touching the validity of the levy of the courthouse and jail tax for 1913, and that an audit of the books was essential in order to ascertain facts bearing upon the issues involved in said case."

## Opinion.

[1, 2] The first three assignments of error are grouped, and the contentions made thereunder may be summarized as follows: (1) That plaintiffs, being private citizens, had no right to have a privately employed auditor make an audit of the county finance records. (2) That such right is only confided to the commissioners' court. Appellants do not cite any statute which gives the commissioners' court the exclusive power to appoint an auditor, or in fact any power to do so, nor have we found any such statute, but article 1451 imposes upon the commissioners' court the duty of examining the accounts and reports of the county officers at each term. Nor do we find any statute giving citizens or taxpayers the general right of inspection of all books, records, and papers of county officers, but find that inspection of the finance ledger and of the books and records of the county clerk has been provided for by statutes. See articles 1401 and 1758, R. S. 1911. There being no constitutional provision relating to the right of inspection, our inquiry must be directed to the proposition whether the common law of England, as it obtains in this state, authorizes the giving to appellees of the right of inspection granted by the court. The common law of England referred to in article 5492 is that which was declared by the courts of the different states of the United States. Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124. We find that, in the decisions of other states, the right of the corporator to inspect the records and books of the public or municipal corporation, of which he is a constituent member, has been uniformly recognized, but that there is no uniformity in the holdings with regard to the facts or circumstances which must be shown before a court will be justified in awarding the, writ of mandamus commanding the custodians of the books and records to permit such inspection. Such records and books are of a public nature, and it is well settled that, where the evidence contained therein is required in a civil action, any person interested in such action is entitled to inspect such records and books and may secure the exercise of the right by the aid of a writ of mandamus. It has also been held in some cases that a writ will be awarded where no special or private interest is shown by the corporator, but he shows that he is a citizen and taxpayer, and that it is important to the public interest for a general examination of the books and records to be had.

[3, 4] There being no decisions of our own courts upon this matter, so far as we have been able to ascertain, we have had recourse to the decisions of the courts of other common-law states, and conclude that the opinion of the Supreme Court of Tennessee, in the case of State ex rel. Welford v. Williams, 110 Tenn. 549, 75 S. W. 948, 64 L. R. A. 435, constitutes the best statement of the rules of law which should be applied to this character of case. We quote from said opinion as follows:

"In theory the right of examination is absolute, but in practice it is at last only a matter of discretion, because such application is likely at any time to be refused on the part of the custodian of the books and papers sought to be examined, and then the right must be forced by mandamus, and this writ is not of absolute right, but merely of discretion, to be awarded only in a proper case; the facts claimed as authorizing its issuance to be judged of in every case by the court, and the writ to be awarded or withheld upon a consideration of all the circumstances presented. So, while the right is, in theory, absolute, yet it is in practice so limited by the remedy necessary for its enforcement as that it can be denominated only a 'qualified right.' The right to an examination for a special purpose, as, for example, to obtain specific information to use in a litigation between the applicant and third parties, or between the applicant and the corporation, and the like cases, while not, in principle, standing upon higher grounds, yet is the more easily grantable, because it does not involve so much time, and so much inconvenience to the custodian of the books and papers, and so much interruption of business, as in case of a general examination. Yet it cannot be doubted, under a state of facts showing it to be important to the public interest that the general examination of the books of a municipality should be had, that the court should allow such .examination at the suit of one who is a. citizen and taxpayer of the corporation. The right rests, not only on the ground that the books are public books, but also on .the same principle that authorizes a taxpayer to en-

join the enforcement of illegal contracts entered into by the municipality, county, or state, for the protection of the applicant and all other taxpayers from illegal burdens. And it is obvious that, in making and enforcing such application, the taxpayer acts, in a very real sense, not only for himself, but for all other taxpayers, and acts, therefore, in the capacity, as it were, of a trustee for all. It must be admitted, also, that the exercise of such power, if prudently and carefully guarded, cannot be otherwise than salutary, because the knowledge that it can be exercised by a citizen and taxpayer, and may be exercised when the public good shall seem, on sound reasons, to demand it, cannot result otherwise than in producing an added sense of responsibility in those who administer the affairs of municipal corporations, and in inducing a greater carefulness in the discharge of the trusts imposed upon them by their fellow citizens under the sanctions of law."

See, also, Dillon on Municipal Corporations (5th Ed.) §§ 560, 1505; State ex rel. Colscott v. King, 154 Ind. 621, 57 N. E. 535; State ex rel. Ferry v. Williams, 41 N. J. Law, 332,. 32 Am. Rep. 219; Clement v. Graham, 78 Vt. 290, 63 Atl. 146, Ann. Cas. 1913E, 1208; Barrickman v. Lyman, 154 Ky. 630, 157 S. W. 924; Excise Commission v. State ex rel. Skinner, 179 Ala. 654, 60 South. 812.

The law, as stated in the opinion quoted from, is logically in accord with the holdings that a taxpayer has sufficient interest to maintain a suit to prevent the illegal creation of a debt or the illegal disposition of moneys of a county. See City of Austin v. McCall, 95 Tex. 577, 68 S. W. 791; Tullos v. Church, 171 S. W. 803, recently decided by this court; Crampton v. Zabriskie, 101 U. S. 609, 25 L. Ed. 1070. We believe the principles enunciated in the foregoing quotation from the opinion of the court in the Williams Case should be applied to the facts of this case, unless our statutes conflict therewith. While no contention is made that any statute denies the corporator of a public or municipal corporation such right of inspection, yet appellant does contend that certain articles of our statutes provide methods of examining the books and accounts of county officers, which are intended to be exclusive, and therefore preclude the exercise of the right of inspection existing under the common law. We are cited to all of chapter 1, tit. 29, Revised Civil Statutes, as well as to articles 1453, 6030, 6041, and 6042, and articles 1578 to 1582, Revised Criminal Statutes. Chapter 1, tit. 29, relates to methods of keeping the accounts of the county, and only one article bears upon the question of the right to inspect such accounts. Article 1402 provides that the finance ledger shall "be at all times subject to the inspection of the public." If the right exists at common law to inspect all the books and records and to secure the aid of a writ of mandamus by making the requisite showing of facts justifying the granting of the writ, we fail to see how the enactment of an article, which gives the public the absolute right to inspect one of the books, can be considered as an

implied revocation of the right to inspect all the books under certain circumstances. The finance ledger is kept by the county clerk, and by article 1758 it is further provided that all books and records and file papers belonging to his office shall at all reasonable times be open to the inspection of any citizen. This provision does not by implication deny the right of inspection of the records of other offices under the common-law rules, but gives an absolute right to the citizens to inspect the clerk's books. Articles 6030, 6041, and 6042 relate to removal of county officers, and do not in any way affect the common-law right of inspection. The criminal statutes provide penalties for the failure of the officers to do their duty, and are in no way inconsistent with the right of inspection. While the Legislature has passed many laws for the purpose of protecting the citizens from misconduct of the county officers, not one of such laws expressly or impliedly deprives the citizens of such right of inspection as is given by the common law. Such laws do not give rights exclusive in their nature. State v. Williams, 110 Tenn. 549, 75 S. W. 948, 64 L. R. A. 418; State v. King, 154 Ind. 621, 57 N. E. 535. We find in Cook on Corporations (4th Ed.) in a note under section 518, the following:

"The common-law right of inspection remains, although a special statutory right is given. People v. Lake Shore R. R., 11 Hun (N. Y.) 1 (1877)."

The case referred to is not accessible to us. Appellants, in their supplemental brief, also cite article 1160 (R. S. 1911), to show that the Legislature has seen fit to make all the books and records of private corporations open to the inspection of any stockholder at all reasonable times.

"Where a statute gives to stockholders the right to examine corporate books, mandamus seems to be granted as a matter of right." Cook on Corporations (4th Ed.) § 514; State v. Transit Co., 124 Mo. App. 111, 100 S. W. 1128.

But when mandamus is sought under the common law, various elements enter into the determination of the issue, and the courts and law writers have not been in accord in announcing the rules with respect to the facts to be shown to entitle the stockholder to writ of mandamus. The fact that our Legislature has given the stockholders of a private corporation an absolute right of inspection instead of leaving them only the common-law right raises no implication that it desired to deprive corporators of public or municipal corporations of the common-law right of inspection.

We conclude that the appellees, under the common law, had the right of inspection under the facts found by the court, and were entitled to the writ of mandamus upon the showing made with regard to the public interests, which, as citizens and taxpayers, they desired to protect, and also upon the court's twenty-sixth finding of fact, which establish-

ed that they had a private or special direct interest for the protection of which they were entitled to inspect the books, records, and papers for the purpose of procuring evidence. Said assignments of error are therefore overruled.

[5] The fourth assignment reads as follows: "Having found that the commissioners' court was having an audit made in good faith, it was error to grant the relief to plaintiff which the court did."

The proposition under this assignment is to the effect that, where the commissioners' court is having a complete audit made of its finances, a group of private citizens have no right, at the same time, to have a privately employed auditor also make such audit. In the first place, the court did not find that the commissioners' court was having an audit made in good faith, nor that the auditor appointed by the commissioners' court was making, or attempting to make, a complete audit of the finances of the county. Were it necessary to support the judgment of the court, a finding could be predicated upon the evidence, to the effect that the appointee of the commissioners' court was incompetent to make an audit, and also that the audit begun by such appointee only covered the period beginning February, 1911, when, as is shown by the court's findings, some of the officers were in arrears for the year 1910. In view of the findings as to how the business of the county had been conducted by members of the commissioners' court, the district court was correct in deciding that the appellees should not be required to abide an audit made by a person appointed by such court after appellees' agent had begun his audit. It is further to be noted that the court found that the audit to be made by appellee's agent would not interfere with that being made by the appointee of the commissioners' court. The assignment of error is not well taken, and is overruled.

[6, 7] By the fifth assignment of error it is contended that a plea in abatement should have been sustained wherein it was urged that plaintiffs had no right to sue on behalf of the county to recover money found to be due it, and therefore had no right to an audit as a basis for ascertaining the amounts due. This assignment ignores paragraph 5 of plaintiffs' supplemental petition, in which the direct personal interest of plaintiffs in the audit of the books and records is fully pleaded, and which pleading is sustained by the court's twenty-sixth finding of fact. But regardless of the pleading just referred to, which furnishes ample ground for overruling the plea in abatement, we do not think it at all necessary that plaintiffs, in order to maintain their suit, should allege that the district or county attorney, charged with the duty, under article 366, of suing for money due the county, has agreed to bring suit if the audit discloses that money is due from other officers. The presumption is that such officer will do his duty, and that, upon the furnishing of evidence to him showing that there is due the county certain money by officers, he will bring suit therefor. It also appears, that if the officers, whose duty it is to sue for money due the county, willfully refuse to do so, proceedings could be instituted for their removal. There is furthermore high authority for holding that when the officers, whose duty it is to sue for the county, refuse to do so, a taxpayer may maintain the suit in behalf of the county. Zuelly v. Casper, 160 Ind. 455, 67 N. E. 103, 63 L. R. A. 133; Willard v. Comstock, 58 Wis. 565, 17 N. W. 401, 46 Am. Rep. 657; Lumber Co. v. McIntyre, 100 Wis. 258, 75 N. W. 964, 69 Am. St. Rep. 925; Commonwealth v. Tilton (Ky.) 54 S. W. 11; Russell v. Tate, 52 Ark. 541, 13 S. W. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193; Lodor v. McGovern, 48 N. J. Eq. 275, 22 Atl. 199, 27 Am. St. Rep. 446. The assignment is overruled.

We have only discussed the questions raised by the assignments of error, and ignored contentions urged in argument, oral and written, which are not assigned as error.

The judgment is affirmed.