## SUPREME COURT.

THE PEOPLE *ex rel.* RICHARD M. HENRY agt. CHARLES G. CORNELL.

A *corporator of a municipal corporation* has a right to have a *general inspection* and *take copies of the public documents and records* of the corporation, under such rules and restrictions as will preserve the safety of the records and prevent any serious interruption of the duties of the *custos*.

*New York Special Term, November,* 1866.

THE relator, Richard M. Henry, obtained from Mr. Justice GEORGE G. BARNARD, an alternative mandamus to Charles G. Cornell, street commissioner of the city of New York, commanding the latter to permit the relator to see and inspect certain contracts and vouchers on file in the street department of said city, or show cause to the contrary thereof. The relator's affidavit showed that he was a citizen of said city, and a member of the corporation, "The mayor,

aldermen and commonalty of the city of New York;" that Cornell was an officer of said corporation, being the head of the street department, a department of the government of said corporation; that said Cornell, as such street commissioner, had in his custody certain contracts for various public works done under his direction, and certain vouchers for payment of the public moneys of said corporation made for such works; that the relator had the right, as a member of said corporation, to see and inspect all such contracts and vouchers, and that it was the duty of said Cornell to exhibit them to any member of the corporation; that the relator had applied to said Cornell in August, 1866, for permission to see such documents, which was refused by said Cornell.

The street commissioner replied by a return, stating that he was, and always had been, willing to show such documents, but that the relator had demanded them as the attorney of the citizens' association, and claimed the right to take them; that he denied the *right* of the relator to see them; that such documents were in danger of destruction or mutilation, if they must be exhibited to any and every person; that to afford all the members of the corporation the right to inspect the files and records of his office would require additional offices and an additional staff of clerks beyond those allowed by law; that the relator must show some private personal interest in such documents before he should see them.

The motion for a peremptory mandamus was argued before Mr. Justice Geo. G. Barnard, at special term.

Joseph F. Daly, *for relator, and the citizens' association.*

I. The relator claims the right as a member of this corporation, to see and inspect the papers on file in the street department.

II. The relator as a citizen, has a common interest with other members of the corporation, in the matters of which

the street department has control, and the papers relating to such matters.

III. The right of the relator as a citizen, to inspect those papers, rests upon the same basis as every right under our free institutions.

The *res publica* from which our republican government takes its name, includes every part and item of the common wealth or common property, and it is a novel doctrine for the street commissioner to maintain that the papers and records relative to the common property belong to the street commissioner exclusively, or that his right to them extends further than their keeping in proper shape for exhibition at all times.

These papers which we call for, relate to the public streets, roads and works of this city. We claim an equal right in all ; to use the public streets and to inspect the records concerning them. The street commissioner's duties are alike to both ; to keep them ready for such use.

The street commissioner, as the agent of the corporation and its members, uses their money to preserve their property, and files his vouchers and evidences of the proper expenditure of such money.

Why are these evidences preserved, if not to be shown when demanded ?

What *greater* or more personal interest can the relator show than that he is a member of the corporation, and that he desires to see the proofs of the proper expenditures of the common money by the common agent?

IV. In England, the right of a member of a corporation to inspect the documents of the corporation, and to have a mandamus compelling the custodian thereof to show them, is well settled (*Willcock on Mun. Cor.* 349, *and cases cited*). Also, the right of a subject to inspect documents of public proceedings lodged in the custody of public officers. (1 *Wiss.* 297 ; *Id.* 240 ; 1 *Black's Rep.* 39 ; *Rex & King*, 2 *T. R.* 234 *and* 304.) Also the right of a manorial tenant to have a mandamus compelling the lord to exhibit the court rolls

and books. (3 *T. R.* 141 ; 10 *Earl,* 235, *and other cases cited above.*)

V. These cases in the English books claim that the relator must show a private right. But if the right be thus far conceded under a monarchial government, surely under our republican government one step further may be taken, and the relator permitted to show as his right the right which underlies our whole fabric of government.

In England public officers are the masters of the people, and the agents of the sovereign. In America they are servants of the sovereign people. The right of the relator is superior to any which an English subject could ever claim.

If this fact is not clearly appreciated by the street commissioner, it is time that the court solemnly declared it.

VI. In respect to the books, records and accounts of the *county* of New York, the statute has declared such a right in the people, without condition or exception (1 *Rev. Stat. chap.* 12, *tit.* 2, *art.* 1).

In respect to public documents of the *city of New York up to the year* 1699, the statutes of the state have expressly declared this right without condition or exception (*Laws of* 1865, *chap.* 171).

There is no reason for making a distinction between the public papers of to-day and those of a century past; or between those of the city and those of the county. And if the legislature has omitted to declare our right in the former, it is simply a defect of police, which the court will remedy by its writ of mandamus, because " in justice and good government it ought to be done " (6 *Bac. Abr. tit. Mand.* 418).

At all events the intent of our law makers is plain, and the court is bound to carry that intent into force.

VII. The street commissioner offers but two reasons for refusing an inspection of the papers, viz : That it " would involve a serious disturbance of the necessary details of his office, and impede the proper working thereof." That it would require a larger office and a " larger staff than he now employs, to secure said records and protect them from loss, injury or mutilation."

We answer to the first, that if we have the right, the showing of such papers is a part of the necessary details and business of his office.

And to the second : 1. That the Revised Statutes of this state making it forgery, and punishable as such, to tamper with these records, sufficiently protects the public property, as other penal statutes protect private property (4 *R. S.* chap, 1, *tit.* 3, *art.* 3, §§ 26 *and* 69). And that: 2. The danger of mutilation of records is only to be apprehended from persons having *private interests* in them, and not from a party having the public good in view, as the relator, Mr. Henry, has.

The counsel of the street commissioner, who speaks of the destruction and robbery of public papers which has heretofore occurred, will no doubt readily admit that the criminal must have been personally and pecuniarily interested in the missing documents.

It is least dangerous to entrust them to the investigation of idle curiosity, and even to a person who seeks them with motives inimical to the official who has possession of them, for in the latter case the searcher will be only too solicitous to carefully preserve evidences of delinquency, and the only danger consists in leaving them in the undisturbed possession of the official himself.

The danger apprehended by the street commissioner is too remote to influence the court.

John K. Hackett *and*
Richard O'Gorman, *for street commissioner.*

I. The cases cited on behalf of the relator, from the English reports, sustain the only true and reasonable position in relation to the claim of a private citizen to examine the books, vouchers, &c., of a public office. The citizen must have some private interest, connected or depending upon the proceeding of the official, and which is affected by the documents which he specially desires to examine. This is justice and the law. The relator seeks to go further, and

claims that because the government of the United States is republican and that of England monarchial, a distinction in this matter exists between the respective rights and duties of citizens and public officials in the two countries. No such distinction exists. The official in both cases is the servant of the people. In both cases his rights and his duties are measured. by the requirements of the public weal. What the public good requires him to do within the sphere of his office, he is bound to do, and no more.

Now the public good does not require a public official to offer the original public documents in his possession to any and all citizens who have no personal interest in the subject of these documents, and are merely actuated by motives of idle curiosity, or of enmity towards the official, whose official records they desire to inspect.

The court will perceive that the argument of the relator claims the right of inspection for such a class.

To afford facilities to such persons would not be for the public good, but would, on the contrary, manifestly impede, disturb and prevent the public service.

The confusion and ill feeling, which would be sure to result from such a practice, must suggest themselves to the court.

Neither is it reasonable that any individual citizen having no private interest or concern in the matter, should claim, as against a public official, to represent the public.

The public official is himself the legal representative of the public, charged specially with the protection of the public interests; and in default of any proof or allegation to the contrary, must be presumed faithfully to discharge his duty.

It is a part of his duty to give to any private citizen full information as to any public transaction in which his personal and private interests are concerned. But it is not his duty to accept every individual citizen who may apply to him, no matter how respectable, as the self-elected representative of the public, and to confide to him all the information, documents, vouchers, &c., which have been placed in the charge of such official, in trust for the whole public.

It will be seen that the distinction in the English cases, is the key to the solution of this class of questions.

Every citizen has a right to get from every public official all reasonable information as to any public matter affecting his own private interest, of which information the official is the proper depository.

The claim that each citizen can, when he pleases, go into a public official's office, claim to represent the whole public, and demand the right to see and copy then and there all the public documents, is simply absurd.

BARNARD, J. The question presented in this matter is this: Has a corporator of a municipal corporation a right to have a general inspection, and take copies of the public documents and records of the corporation of which he is a member, under such rules and ·restrictions as will preserve the safety of the records, and prevent any serious interruption of the duties of the *custos?*

Upon the argument, I was strongly of opinion that such corporator had such right, and subsequent reflection and investigation has confirmed that opinion.

It was claimed and strongly urged on the argument, that such corporator had a right to inspect such records only when he had some private interest, for the enforcement and protection of which, the inspection of certain documents ·is necessary, and that even then the inspection must be limited to those documents; and it was claimed that this rule was established by the English decisions.

I have examined the English authorities referred to on the argument, and also such as I have been able to discover in the books, and think that none of them so restrict the right of inspection, while many of them distinctly uphold the right of a general inspection.

In *Rogers* agt. *Jones* (5 *D. & R. p.* 484), it did not appear on the moving papers, that any question was involved in the cause which could justify an inspection of the court rolls, yet the mandamus applied for was ordered to issue.

In *King* agt. *Shelley* (3 *T. R.* 142), the respondent offered

to show everything connected with the demandant's title, but the demandant claimed the right to general inspection, and mandamus went accordingly.

In *Herbert* agt. *Ashburn* (1 *Wils. p.* 297), a rule was made requiring the plaintiff to show cause why the defendant should not have liberty to inspect the books of the sessions of the corporation of Kendale, it was objected that the party is not entitled to see the books unless he can show to the court by affidavit, that they contain matters relating to the thing in question, which is, whether the park lands be within the town or corporation of Kendale? *Sed per curiam:* "These are public books which everybody has a right to see," and the rule was made absolute, without hearing the other side.

Upon the facts appearing before the court in the above three cases, the decisions made therein could only be made upon the ground that a corporator, from the mere fact of being a corporator, had a right to a general inspection of the books and records of the municipal corporation of which he was a member; consequently the court must be regarded as having in making these decisions, decided in favor of such right.

Thus we see an eminent writer on the subject of municipal corporations (*Glover on Municipal Corporations, p.* 262), lays down the following text as being derived from the decisions: "Every corporator has a right to inspect all the records, books and other documents of the corporation upon all proper occasions, and if upon application, the officer who has the custody refuse to show them, the court will grant a mandamus to enforce his right."

There are some cases which at first blush would appear to be authorities against the right of general inspection, but on close examination they do not turn out to be so.

Thus in *King* agt. *Babb* (3 *T. R.* 580), the court while deciding that upon a rule of inspection made in a suit, the party is restricted to an inspection of such documents as have a bearing on the subject matter of the litigation, yet do not undertake to decide that any such rule of restriction

People agt. Corneil.

obtains when a corporator sues out a writ of mandamus founded solely on his right to inspect as being a corporator.

In *King* agt. *Allgood* (7 *T. R. p.* 746), it was held that a rule for inspection could not be made unless a suit was pending. This doctrine, however, was distinctly overruled in *King* agt. *Lucas* (10 *East,* 235). In *King* agt. *Lucas,* it was held that the demandant had a private interest to subserve in the inspection called for. This was undoutedly good ground for making the order. But the bare placing by a court of its decision on one good ground, neither expressly nor impliedly decides that there are not other equally good grounds. The court in *King* agt. *Lucas,* does not undertake either to overrule the first three cases I have referred to, nor to deny the right of a corporator to a general inspection. A good ground applicable to that particular case existed for granting the order, and the court chose to, and did, put its decision on that ground.

The English authority seems to me to be in favor of, and not against the right of a corporator to a general inspection.

I see no principle upon which it can be held that a corporator of a municipal corporation has not a right to a general inspection of the public records.

It is true that the whole body of the corporators acting through their legally constituted representatives, as well perhaps as the legislature under which the corporation holds its charter, may make laws and ordinances restricting the right of general inspection, but unless there is some such restriction, I am unable to see any principle upon which it can be held that a corporator has not a right to a general inspection of "public records of the corporation." In the language of the court in *Herbert* agt. *Ashburn,* "these are public books which everybody has a right to see."

I have been referred to no express enactment either by the corporation or the legislature, restricting the right of inspection, nor have I been furnished with any argument showing that any such restriction is necessarily implied from the framework of the charter of the corporation, and the acts of the legislature in reference thereto. If the learned

counsel cannot find any such express enactment, nor furnish any such argument, it would be fair to assume that no such enactment exists, and that no such argument can be furnished.

I have been unable myself to find any such positive enactment, and am unable to see any implied restriction in the frame work of the charter, or in the various legislative acts relative thereto.  The citizens within the corporate limits constitute the corporation, while the mayor, aldermen, common council, street commissioner and others, are its officers or agents, to whom are confided under certain restrictions, the care and managements of the property, business and interests of the corporation.  If from the bare facts that corporations can only act through officers or agents, and that, therefore, officers are appointed to whom the care of the property, business and interests of the corporation are entrusted, and who are subject to removal before the time for which they are appointed has expired, and who are also subject on the expiration of their terms to be replaced by others, at the will of the corporators, it results that immediately on the appointment of such officers the corporators have no longer any interest in the manner in which their property, business and interest is cared for, conducted and looked after by their agents, then it also follows that the corporators would have no right to inspect the books and papers in the custody of the officers relating to their official business.  If, however, the corporators, notwithstanding the appointment of such officers, still retain an interest in the manner in which their property, business and interests is cared for, conducted and looked after, then it follows that they have a right to as full knowledge of all the official acts of their officers as the officers themselves have, so as to enable them to ascertain whether their officers have performed their duty in such manner as is acceptable to them, with a view to determine whether they will continue them in office or not.

It cannot be seriously questioned but that the corporators, notwithstanding the appointment of officers to conduct the business of the corporation, still retain a very great interest

People agt. Cornell.

in the mode and manner in which it may be conducted, and consequently upon the above reasoning, have a right to full knowledge of all the official acts of their officers, and of course a right to all the means of knowledge which their officers possess in their official capacity.

I have come, therefore, to the conclusion that both on authority and principle, the relator is entitled to the inspection he asks, and also to make such copies of public documents as he desires.

There is one argument against granting the writ remaining to be noticed.

That argument is, that it would be very inconvenient to allow every citizen that chooses so to do, to come into the office and inspect documents, and make copies of them ; and it is suggested that if they be allowed so to do, larger accommodations, and a larger clerical force would be required.   I do not understand that there is any serious difficulty in procuring larger accommodations and more clerical force, if that should be found necessary.   But this is a mere anticipated difficulty, which I apprehend will not practically occur. If it should occur, I see no difficulty in providing means to remove it.

Of course the street commissioner has the right and power to prescribe reasonable general rules as to the hours during which citizens may inspect the records of his office, and also such reasonable general rules as shall be necessary to preserve the records from loss or mutilation.   ·