THE STATE, EX REL. COLSCOTT, v. KING, AUDITOR, ETC.

[No. 18,821.   Filed May 29, 1900.]

COUNTIES.—*Records.—Examination by Taxpayer.*—A citizen and taxpayer of the county has such an interest as entitles him to examine the records and papers in the county auditor's office, under proper regulations, for the purpose of ascertaining the condition of the administration of the fiscal affairs of the county. *pp. 621-627.*

SAME.—*Records.—Examination by Taxpayer.*—The fact that the board of commissioners of the county is invested with the power and duty to audit the accounts of all officers, and has the care and management of the public money does not deprive a citizen and taxpayer of the county of the right to examine the records of the county auditor's office for the purpose of ascertaining the condition of the public funds. *pp. 627, 628.*

SAME.— *Records.— Examination by Taxpayer — Mandamus.* — Mandamus is the proper remedy to enforce the right of a citizen and taxpayer of the county to examine the records in the county auditor's office. *p. 629.*

From the Union Circuit Court.   *Reversed.*

*G. C. Florea* and *L. L. Broaddus,* for appellant.

*F. M. Alexander* and *S. S. Harrell,* for appellee.

JORDAN, J.—This is an appeal by the relator from a judgment on demurrer for insufficiency of facts to his petition for a writ of mandamus against appellee, the auditor of Franklin county, to compel him to allow the relator an inspection of the public records and papers of the auditor's office of said county.   The action was originally instituted in the Franklin Circuit Court, but was subsequently venued to the Union Circuit Court.   A single question is presented: Did the court err in sustaining the demurrer of the appellee to the petition?

An epitome of the facts alleged in the petition may be said to be as follows:   The relator, John A. Colscott, is a citizen and resident of Franklin county, Indiana, and a taxpayer therein, and had been a resident and taxpayer of that county for over ten years prior to the beginning of this

action. He avers in his petition that he prosecutes this suit on his own behalf and on behalf of all other citizens and taxpayers of said county who are aggrieved by the wrongs set out in the petition. On March 18, 1898, appellee, George B. King, was the auditor of said county, and was, as such officer, legally in the possession of the books, records, and papers belonging to his said office. On that day the relator went to the auditor's office in the town of Brookville to inspect and examine the public records, books, papers, and files of said office for the purpose of ascertaining whether said books and records, etc., were legally and properly kept, and especially for the purpose of discovering whether the money and property of the county had been duly accounted for by the persons and officers charged with the collection and disbursement of the same, and to ascertain whether any money was due to said county from any person or persons. The petitioner further shows that he desires such inspection and the information to be obtained thereby as a citizen and taxpayer for the purpose of pursuing, if necessary, the proper legal remedies to enforce the collection of any moneys or demands that may be due the county, and to require the proper authorities to enforce such demands, and that he is not prompted in his desire for the inspection in question by any motives of idle curiosity, and that he does not intend in any way or manner to interfere with or interrupt the orderly administration of the affairs of said office in the said inspection or examination. He alleges that he requested and demanded of appellee, as such auditor, that he allow him, in connection with two competent accountants as his assistants, to have access to the public books, records, and papers of said auditor's office and that he, together with said accountants, be by said auditor permitted to inspect and examine such books, records, and papers of the office as related to or pertained to the fiscal accounts of said county, for the purposes as aforesaid mentioned, and that he be permitted to make such extracts and copies of said

records and papers as may be necessary and pertinent to said examination, and that he be allowed to continue the inspection of said books and records from day to day in said auditor's office in the presence of the appellee, if the latter so desired to be present, until said inspection or examination is completed.

It is disclosed by the petition that for a long time prior to the making of said demand for the inspection in question, the relator and many other citizens and taxpayers of said Franklin county believed that there had been an unlawful conversion and use of the public funds thereof, and they desired that the public records of the auditor's and treasurer's offices be examined, in order to ascertain or discover the true condition of the administration of the fiscal affairs of said county. The relator, as it is disclosed, was a member of a committee appointed by numerous taxpayers of the county to secure the inspection of the public records.

The petition further shows that the defendant, as such auditor, refused, and still refuses, to allow the relator to have an examination of the records and papers of his said office. It is also alleged that a more particular description of the books, records, and documents, which the relator desires to examine, can not be given, for the reason that they are in the possession of the defendant. The petition closes with a prayer for a writ of mandamus awarding to the relator, together with his two agents or assistants, the right to inspect or examine the records and papers of said auditor's office for the purposes stated, and for all other and proper relief.

The defendant appeared to this action, and waived the issuing of the alternative writ, and demurred to the petition, with the result as hereinbefore stated.

Counsel for appellee insist, (1) that, even though the relator can be held to be entitled to the right which he demands, such right can not be enforced by mandamus; (2) that, under §7830 Burns 1894, §5745 R. S. 1881 and

Horner 1897, the legislature has invested the board of commissioners of the county with the duty and power to audit the accounts of all officers, and have the care, management, collection, and disbursements of public money; and that under §7995 Burns 1894, §5917 R. S. 1881 and Horner 1897, it is provided that the county treasurer shall at all times keep his books and office subject to the inspection of such board of commissioners; hence, it is contended that, under these statutory provisions, the right and duty of the county commissioners to inspect and examine the records must be held to be an exclusive one, and impliedly deprives any citizen or taxpayer of that right, when he seeks to exercise it for the purpose which the relator alleges he has in view.

It is further contended that the examination sought to be obtained herein is incompatible with public policy, inasmuch as it might subject the public records to loss and mutilation, and also seriously interfere with the duties of the office and will consume the time of public officials without compensation.

Section 7831 Burns 1894, §5746 R. S. 1881 and Horner 1897, provides that, "All the books, accounts, vouchers, papers and documents, touching the business or property of the county, shall be carefully kept by the auditor and open to the inspection of any person". There can be no doubt but what the legislature, under this statutory provision, has expressly recognized the right of any person to inspect the public records, books, files, papers, and documents belonging to or kept in the office of the county auditor. The legislative command, under this section, is plain and emphatic, and may be easily interpreted. Of course this right of inspection is not to be viewed as one wholly unqualified or free from all restrictions, but must be accepted and exercised by the inspector in such a manner as not materially to interrupt or interfere with the officer in the administration or discharge of his official duties.

The general rule which obtained at common law was that every person was entitled to an inspection of public records, by himself or agent, provided he had an interest in the matters to which such records related. Where, however, the inspection desired was merely to gratify idle curiosity, or motives which were purely speculative, the right of inspection, under the common law, was denied. 20 Am. & Eng. Ency. of Law, pp. 521, 522, and authorities cited in footnote 2, p. 522.

It is evident, under the facts in this case, that the relator asserts no other interest or right upon which to base his demand for an inspection of the records in question than that which is common to any and all other citizens and taxpayers of Franklin county, and that he is interested in the information which he seeks, by virtue of the inspection desired, only to the extent of a citizen and taxpayer of that county. He expressly disclaims in his petition that he is actuated or prompted to secure the inspection in controversy through mere curiosity, but alleges that he rests his demand to examine and search the public records in the custody of the defendant upon the facts that he is a citizen and taxpayer of the county, and that he desires, by the means of such an examination, to discover the condition of the public revenue, and to ascertain if the affairs of his county have been honestly and faithfully administered by the public officials charged with that duty.

Aside from the statute to which we have referred, we are of the opinion that the relator, under the facts presented by his petition, has shown such an interest in the matters to which the records and papers in the offices of the auditor and treasurer of his county relate as would entitle him to a general inspection thereof for the purpose which he has in view. These public records are the property of the county, and are not the property of the officer in whose custody they have been placed. The latter is but the mere custodian thereof. It is his imperative duty to keep them safe for the

use and benefit of the office to which they belong, and also for the use and benefit of the public. Certainly the officer or custodian has the right, and it is his duty, in the control of an inspection or examination by any person, to keep a general surveillance over such records and papers and make and enforce such reasonable rules or regulations in regard to their inspection and use as will prevent such inspection from materially interfering with or hindering him in the discharge of the functions or duties of his office, and also to prevent the mutilation or loss of such records and papers.

A county may be said to be an involuntary public corporation organized by the State as an instrumentality in the furtherance of its government. The people residing therein are virtually the corporators. As taxpayers they contribute to the public revenue, and as voters they select the public officials who are to administer the county's affairs. Surely, under such circumstances, they retain or have a great interest in the proper management of the business and matters pertaining to their county, and, therefore, are entitled to know whether the public officials, whom they have selected to represent them, have properly used, disbursed, and accounted for the public funds which, under the law, have been confided to their custody and administration.

The various county officials, in a political sense, are considered as the agents of the people in managing and conducting the business of the county. These officials are commonly denominated—and properly so—"public servants", and are directly responsible to the people who select them for the honest and faithful discharge of the duties and powers with which, under the law, they are invested. Under such conditions and circumstances, as they exist under the peculiar structure or genius of our government, it would certainly be a harsh interpretation of our laws, and one which would be, in our opinion, adverse to sound reason, to deny any taxpayer or citizen the right, subject to the reasonable rules and regulations previously mentioned, to in-

spect or examine the public records of his county in order to discover or ascertain whether the public officers had properly administered the funds of the county to which such taxpayer had been required to contribute. In fact there can be no sound reason advanced for depriving a citizen of this right, for it is evident that the exercise thereof, for the purpose in view in this case, will serve as a check upon dishonest public officials, and will in many respects conduce to the betterment of the public service.

It has been a well recognized rule of the law that a corporator of a municipal corporation has the right to have a general inspection of the public records and documents of such corporation, and to make copies thereof under such rules and restrictions as will preserve such records from loss and mutilation, and prevent any material interruption of the duties of their custodian. That this rule, under the facts in the case at bar, is applicable, and ought to control, cannot be controverted upon any reasonable grounds.

Mr. Dillon, in his valuable work on municipal corporations, in treating of the right of a corporator to inspect the corporate records, says: "The following points have been ruled as stated by Mr. Willcock: Every corporator has a right to inspect all the records, books, and other documents of the corporation, upon all proper occasions; and if upon application for that purpose, the officer who has the custody refuse to show them, the court will grant a mandamus to enforce his right." 1 Dillon Mun. Corp. (4th ed.) §303; *People* v. *Cornell*, 47 Barb. 329.

There is no force in the contention of appellee that, by reason of the fact that the board of commissioners of a county is charged with the duty of inspecting the records of the treasurer's office, therefore, all citizens and taxpayers must be held to be excluded from an inspection or examination of such records.

It must be presumed, under the facts, that the relator

and other citizens and taxpayers of the county have, as
they should, an interest in the manner in which the
public affairs of their county are conducted, and such in-
terest is not, nor can it be presumed to have been, relin-
quished by them by reason of the fact that they have
chosen certain officials to represent them, whose duty,
under the law, is to see that the public affairs are properly
conducted. They must still be held to have a right to
ascertain for themselves this fact and to be informed, if
they desire, in respect to the official acts of their officers
or servants in the management of the business of the
county, and for this purpose, at least, they ought to be
accorded the right to obtain all the knowledge and informa-
tion which can be afforded them through an inspection of
the records and documents belonging to the public offices
of the county.

Counsel for appellee rely upon such cases as *Webber* v.
*Townley*, 43 Mich. 534, 5 N. W. 971, *Buck* v. *Collins*,
51 Ga. 391, and others of like character, wherein it is
held that, at common law, there is no right to inspect and
make copies of public records for speculative purposes, by
making abstracts of such records with a view to their future
sale and use. These cases, however, cannot be considered
as authoritative upon the point involved in this appeal.
The principle upon which they are decided has been
denied by the supreme court of Michigan since the case
of *Webber* v. *Townley, supra,* was decided, and the latter
case is expressly overruled in *Burton* v. *Tuite,* 78 Mich.
363, 44 N. W. 282, 7 L. R. A. 73. In this last appeal,
Morse, J., speaking as the organ of that court, said: "I
do not think that any common law ever obtained in this
free government that would deny to the people thereof the
right of free access to, and public inspection of, public
records. They have an interest always in such records,
and I know of no law, written or unwritten, that provides
that, before an inspection or examination of a public record

is made, the citizen who wishes to make it must show some special interest in such record. I have a right, if I see fit, to examine the title of my neighbor's property, whether or not I have any interest in it, or intend ever to have. I also have the right to examine any title that I see fit, recorded in the public offices, for the purposes of selling such information, if I desire." This statement, upon the question involved in the case from which we quote, we consider the correct doctrine.

The conclusion at which we have arrived in this appeal is fully supported by the following authorities, in addition to those. heretofore cited: *State* v. *Williams*, 41 N. J. L. 332; *State* v. *Rachac*, 37 Minn. 372, 35 N. W. 7; *Hanson* v. *Eichstaedt*, 69 Wis. 538, 35 N. W. 30; *People* v. *Richards*, 99 N. Y. 620, 1 N. E. 258; *People* v. *Reilly*, 38 Hun 429; *Hawes* v. *White*, 66 Me. 305; *O'Hara* v. *King*, 52 Ill. 303; *Boylan* v. *Warren*, 39 Kan. 301.

The relator, being entitled to the right which he seeks, there can be no question but what mandamus is the proper remedy for its enforcement. That it is the proper remedy is recognized by many of the cases hereinbefore cited, and, in addition to those in support of this point, see the following authorities: *Wampler* v. *State*, 148 Ind. 557, 38 L. R. A. 829; High on Ex. Leg. Rem. §74; 14 Am. & Eng. Ency. of Law, p. 171.

The right to inspect the records in question also impliedly awards to the person entitled to it sufficient time, under the circumstances, in which to make the inspection for the purpose contemplated. We are constrained, therefore, to conclude that the relator in this case, under the facts, is entitled to the inspection which he demands, and also entitled to make such copies and abstracts of the records as may avail him in carrying out the purpose of his examination, subject, however, to the conditions and restrictions mentioned in this opinion.

It follows that the petition was sufficient, and that the demurrer thereto ought to have been overruled, and the defendant required to answer.

For error of the court in sustaining the demurrer to the petition, the judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.