[Civ. No. 2445. Second Appellate District.—December 17, 1917.]

W. C. MUSHET, Respondent, v. DEPARTMENT OF PUBLIC SERVICE OF THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

MANDAMUS—INSPECTION OF PUBLIC RECORDS—PARTY BENEFICIALLY IN-
TERESTED.—In an action in *mandamus* by a resident, citizen, and taxpayer of the city of Los Angeles to compel its officers to allow the plaintiff to inspect and examine certain of the books of account, records, papers, and documents kept by such officers, under the

claim that the same were public records, a judgment on the pleadings in favor of the plaintiff was erroneous, where the answer alleged that the plaintiff was not the party beneficially interested, but sought the information for a gas and electric corporation engaged in competition with the city.

MUNICIPAL CORPORATIONS—BOOKS OF ELECTRIC SYSTEM OF LOS ANGELES —PRIVATE PROPERTY.—Books of the city of Los Angeles relating to its electric system are not public documents, as that term is used in sections 1888 and 1894 of the Code of Civil Procedure, providing for inspection of public records, but are the city's private property.

ID.—INSPECTION OF CITY'S PRIVATE RECORDS—RIGHT OF CITIZEN.—A citizen of the city of Los Angeles has the right to inspect the books and papers of the municipal electric system conducted by that city to the same extent as a stockholder of an ordinary corporation can inspect the books of such a corporation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge.

The facts are stated in the opinion of the court.

Albert Lee Stephens, City Attorney, W. B. Mathews, Lewis E. Whitehead, and Wm. B. Himrod, for Appellants.

Delphin M. Delmas, for Respondent.

WORKS, J., *pro tem.*—This action was commenced for the purpose of compelling appellants, by writ of mandate, to allow respondent to inspect and examine certain of the books of account, records, papers, and documents kept by appellants, under the claim that the same are public records. The petition for the writ alleges that respondent is a resident, citizen, and taxpayer of the city of Los Angeles, to the affairs of which the duties of appellants relate. The appellants answered the petition and the respondent made a motion for judgment on the pleadings, which was granted and judgment was rendered accordingly. It is from the judgment that the appeal is prosecuted.

In ruling upon the motion for judgment on the pleadings, the trial judge took the allegations of the answer as true (*Bradford Investment Co.* v. *Joost,* 117 Cal. 204, 211, [48 Pac. 1083]), and the points presented on this appeal turn on the question as to whether the answer states a defense. If it does, the motion for judgment on the pleadings was improperly granted.

The answer specifically denies an allegation of the petition that petitioner "brings this action on behalf of himself and other citizens and taxpayers of the city of Los Angeles similarly situated." It is alleged affirmatively, in the answer, that appellants are managing and controlling an electric system which the city is constructing for the purpose of generating, transmitting, and distributing heat, light, and power, and that certain parts of the system are already completed and in beneficial operation; that the Los Angeles Gas & Electric Corporation is in the same kind of business and is a competitor of the city in the business; and that it is and has been the policy of the Gas & Electric Corporation to ascertain the plans of the city for extending its electric system, and to anticipate the construction of such extensions by the municipality by installing its own lines in territory proposed to be occupied by the city, and thus prevent the city from securing or serving additional customers desired by it. The answer then proceeds: "That defendants are informed and believe, and therefore allege, that said Los Angeles Gas & Electric Corporation is the party beneficially interested in the bringing and prosecution of this proceeding, and that said W. C. Mushet, petitioner herein, is seeking by means of this proceeding, to gain access to the records, books, papers, memoranda, and data concerning the municipal electric project of the city of Los Angeles, and mentioned in the petition herein, for the use and benefit of said Los Angeles Gas & Electric Corporation, in connection with the operation and extension of its own electric system in competition with the electric system of said city."

The Code of Civil Procedure provides (section 1086) that the writ of mandate "must be issued upon the verified petition of the party beneficially interested," and it has been held frequently that it will alone issue upon the petition of such party. (*People* v. *Pacheco*, 29 Cal. 210; *Fritts* v. *Charles*, 145 Cal. 512, [78 Pac. 1057].) The allegations of the answer show that the Los Angeles Gas & Electric Corporation is the party beneficially interested in this action, in that they show that Mushet desires to examine the records of appellants in a search for information for that corporation and not for himself. If the corporation is entitled to examine the records it can, of course, do so through Mushet as its agent; but whether Mushet, as its agent, may make the ex-

amination cannot be determined at his suit, but only at the suit of the principal, the corporation itself.

Our views upon this question necessitate a reversal of the judgment, but, as the action must now go to trial, it becomes incumbent upon us to pass upon other allegations of the answer which the trial court held insufficient in granting the motion for judgment on the pleadings. Let us, however, first briefly mention a claim of the appellants which we do not deem it necessary, or even proper, now to pass upon, for the reason that, considering what we have said above, it cannot again arise in the present action. The appellants contend that they cannot be compelled to open to a business competitor the books and records under their charge. If, after hearing the evidence upon the issue as to the beneficial interest of the Gas & Electric Corporation in the litigation, the trial court shall determine that such interest is actually in the corporation, and not in the petitioner, the action fails. If, on the other hand, the court shall resolve that question against the contention of the appellants and hold that Mushet is proceeding in his own right as a principal, the question as to the opening of the books to a business competitor cannot arise, for the reason that Mushet is not a competitor of the city.

The appellants contend that the records, an examination of which is now sought, are not public records or writings subject to the inspection of either Mushet or the Gas & Electric Corporation, but that they are the private property of the city of Los Angeles. There are several sections of the codes of this state which provide that citizens are entitled to an inspection and, upon demand, to certified copies of public writings, and to these sections we are referred; but there seem to be but two sections which define or determine what are public writings. Section 1894 of the Code of Civil Procedure provides: "Public writings are divided into four classes: 1. Laws; 2. Judicial records; 3. Other official documents; 4. Public records, kept in this state, of private writings." Section 1888 of the same code follows: "Public writings are: 1. The written acts or records of the acts of the sovereign authority, of official bodies and tribunals, and of public officers, legislative, judicial, and executive, whether of this state, of the United States, of a sister state, or of a foreign country; 2. Public records, kept in this state, of private writings."

The books and papers which the petitioner seeks to examine, by means of this proceeding, are described in his petition as "all books of account, records, papers, and other documents and kept by the department of public service of the city of Los Angeles which would in any manner explain the items of expenditure, and for what the same were expended, by or under the authority of the board of public service commissioners, or otherwise, of any and all sums of money expended, or ordered or authorized to be expended, by said board of public service commissioners, or said department of public service, or either of them, from either of" two funds mentioned elsewhere in the petition as arising from certain bond elections in the city of Los Angeles, expenditures from which funds were under the control of appellants, and which expenditures were to have been made for the acquisition and construction of works for generating and distributing electricity for the inhabitants of the city. Returning to the language of sections 1894 and 1888 of the code, it is plain that the books and papers mentioned in the petition are not described in either subdivisions 1, 2, or 4 of section 1894, or subdivision 2 of section 1888. If the sections cover them at all they must fall within the language of the one remaining subdivision of each; in other words, consolidating the language of those subdivisions, they must answer this description: They must be "official documents" other than laws or judicial records, and must be "The written acts or records of the acts . . . of official bodies" or "tribunals," or "of public officers, . . . of this state." Leaving aside the question, as to which there might be some debate, whether the books and papers in question are written acts or records of acts, as those terms are used in the statute, we take up the question whether they are official documents. It is conceded by counsel for respondent, and the authorities are plainly to the effect, that, in handling the affairs to which these books and papers relate, the appellants are engaged in a private business of the city of Los Angeles. (*Marin Water & Power Co.* v. *Town of Sausalito*, 168 Cal. 587, 595, [143 Pac. 767].) In making the concession mentioned, counsel for respondent says: "I agree, of course, that, when engaged in 'the installation and operation of the municipal electric system,' the city is neither more nor less than a 'private public utility corporation.' It is, in other words, an electric corporation, and nothing more. Of the city of

New York, when similarly engaged in the installation and operation of its municipal subway, the court of appeals said: 'The city owns the subway, and it is a railroad corporation, so far as the construction, operation, and leasing thereof is concerned. . . . In other words, the subway is a business enterprise of the city, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation. It was built and belongs to the city as a proprietor, not as a sovereign.' (*In re Board of Rapid Transit Commrs.*, 197 N. Y. 81, [18 Ann. Cas. 366, 36 L. R. A. (N. S.) 647, 90 N. E. 456].)'' This is a fair statement of the law on the subject. The appellants contend that the books of account and the records, papers, and documents pertaining to expenditures made in connection with a business such as is described in the quotation just made from the New York decision cannot in any sense be viewed as public documents. It is contended that, as all of the properties and instrumentalities used in the conduct of the business are the private property of the city, the books of account showing the conduct of the business by means of those instrumentalities must also be its private property. This would seem to be a just estimate of the situation. At any rate, we are convinced that the books and papers in question are not public documents, as that term is used in the sections of the code now under review. The appellants, it is true, are by the charter of Los Angeles made officers of the municipality; but the books and papers which respondent seeks to examine are not made official documents merely because they are kept under the direction of city officials. Their character is fixed by the considerations which we have already advanced.

The respondent asserts that he occupies the same relation to the appellants and to the business conducted by them as a stockholder of an ordinary public utility corporation occupies toward such corporation. He argues that because the stockholder is entitled to access to the books and papers of his corporation, he, the respondent, is likewise entitled to access to the books and papers kept by appellants. The right of the stockholder of an ordinary corporation to open the books of his corporation is a right which existed at common law as an incident to his interest in the corporate enterprise. (*Hobbs* v. *Tom Reed Gold Min. Co.*, 164 Cal. 497, 501, [43 L. R. A. (N. S.) 1112, 129 Pac. 781].) Before we proceed

to consider, the point made by respondent, let us state another rule of law, the appositeness of which does not now appear but will immediately be shown to exist. At common law every interested person was entitled to the inspection of public records. (24 Am. & Eng. Ency. of Law, 182; *People v. Cornell,* 47 Barb. (N. Y.) 329; *Brewer* v. *Watson,* 71 Ala. 299, [46 Am. Rep. 318]; *State* v. *King,* 154 Ind. 621, [57 N. E. 535]; *Clement* v. *Graham,* 78 Vt. 290, [63 Atl. 146].) Respondent invokes an analogy, in the matter of the right to inspect records, between the situation of· a stockholder with reference to his corporation and the situation of respondent himself with relation to the appellants, and an analogy may also be claimed under the rule of the common law last stated. That analogy is between the situation of a citizen as to public records which he has not the right by statute to inspect and the situation, again, of respondent with relation to the books and papers of appellants. The principle behind the rule of the common law to the effect that a stockholder of an ordinary corporation has an inherent right to inspect the corporate books and papers also demands the extension of the same right to respondent in connection with the books and papers of appellants. The reason for the rule is the same in each case. In *Hobbs* v. *Tom Reed Gold Min. Co.,* 164 Cal. 497, [43 L. R. A. (N. S.) 1112, 129 Pac. 781], the court said, at page 501 [of 164 Cal.], of the right of a stockholder of a corporation to inspect the corporate books: "The reasoning on which this rule is founded is that a stockholder has an interest in the assets and business of the corporation and that such inspection may be necessary or proper for the protection of his interest or for his information as to the condition of the corporation and the value of his interests therein."

Likewise, the rule of the common law that an interested person may examine public records would seem, on principle, to apply to the right of respondent to examine the books and papers kept by appellants—although we have held that, strictly speaking, they are not public records—because the reason for the right is the same in both cases. In *State* v. *King,* 154 Ind. 621, [57 N. E. 535], which was a controversy over the attempt of a citizen to enforce the right to inspect certain records, the supreme court of Indiana said: "Aside from the statute to which we have referred, we are of the opinion

that the relator, under the facts presented by his petition, has shown such an interest in the matters to which the records and papers in the offices of the auditor and treasurer of his county relate as would entitle him to a general inspection thereof for the purpose which he has in view. These public records are the property of the county, and are not the property of the officer in whose custody they have been placed. The latter is but the mere custodian thereof. It is his imperative duty to keep them safe for the use and benefit of the office to which they belong, and also for the use and benefit of the public. . . . A county may be said to be an involuntary public corporation, organized by the state as an instrumentality in the furtherance of its government. The people residing therein are virtually the corporators. As taxpayers they contribute to the public revenue, and as voters they select the public officials who are to administer the county's affairs. Surely, under such circumstances, they retain or have a great interest in the proper management of the business and matters pertaining to their county, and therefore are entitled to know whether the public officials whom they have selected to represent them have properly used, disbursed, and accounted for the public funds which under the law have been confided to their custody and administration. The various county officials, in a political sense, are considered as the agents of the people in managing and conducting the business of the county. These officials are commonly denominated, and properly so, 'public servants,' and are directly responsible to the people who select them for the honest and faithful discharge of the duties and powers with which, under the law, they are invested. Under such conditions and circumstances, as they exist under the peculiar structure or genius of government, it would certainly be a harsh interpretation of our laws, and one which would be, in our opinion, adverse to sound reason, to deny any taxpayer or citizen the right, subject to the reasonable rules and regulations previously mentioned, to inspect or examine the public records of his county in order to discover or ascertain whether the public officials had properly administered the funds of the county to which such taxpayer had been required to contribute. In fact, there can be no sound reason advanced for depriving a citizen of this right; for it is evident that the exercise thereof, for the purpose in view in this case, will serve as a check

upon dishonest public officials, and will in many respects conduce to the betterment of the public service.'' In short, the analogy claimed by respondent is perfect. Reason requires the application of both of the stated rules of the common law to his relationship to the books and papers kept by appellants. Therefore, as the public ownership of utilities did not come into any considerable vogue in the British Isles until about 1835 (Dillon's Municipal Corporations, 5th ed., sec. 1292), a time long after the promulgation of the two rules of the common law to which we have so often referred, we see, in the situation now before us, a new condition of affairs, uncontemplated at the time those rules sprang into being, but to which they must be held to have a distinct application. We have no doubt of our right to make this application. The rules of the common law will be applied to those cases which come within their reason and equity, even when such cases seem to be outside the strict letter of such rules as they are ordinarily stated. The terminology employed in the enunciation of the principles of the common law had its rise in conditions existing at the time of such enunciation. As new situations are discovered, strict terminology will be relaxed, and it will be determined, accordingly, that such situations either do or do not come within the rules, as their true spirit and equity may direct and require. These statements find general support in *Katz* v. *Walkinshaw,* 141 Cal. 116, 123, [99 Am. St. Rep. 35, 64 L. R. A. 236, 70 Pac. 663, 74 Pac. 766]; *San Joaquin & Kings River Co.* v. *Fresno Flume Co.,* 158 Cal. 626, 629, [35 L. R. A. (N. S.) 832, 112 Pac. 182]; *Martin* v. *Superior Court,* 176 Cal. 289, 168 Pac. 135. If it shall appear to the trial court, upon the hearing of evidence under the issues presented by the pleadings, that the respondent is not acting for the Los Angeles Gas & Electric Corporation, but upon his own interest as a citizen, then application will be made of the rules of the common law to which we have adverted.

The judgment is reversed, with directions to the trial court to deny the motion for judgment on the pleadings.

Conrey, P. J., and James, J., concurred.