OPINION OF THE COURT

Per Curiam.

Order entered July 27, 1982 reversed, on the law, and petitioner’s motion for an order unsealing the records in the instant criminal case denied.
The essential facts are not in dispute. Defendant was arrested on March 25, 1981 on charges of prostitution and resisting arrest. Shortly thereafter, police learned that he was wanted as an escaped felon by the state of Massachusetts, a conviction on which he still had 18 years to serve. Extradition proceedings were commenced under a separate docket number. Between March 25,1981 and July 7,1981, *892 a series of hearings concerning the charges were openly conducted in Manhattan Criminal Court. At the conclusion of these proceedings, defendant waived extradition proceedings and was returned to the custody of the Massachusetts correctional authorities to resume serving his prison term. The misdemeanor charges were dismissed on motion of the prosecutor and on July 7, 1981, an order was issued sealing the transcripts of the proceedings pursuant to CPL 160.50.
Approximately one year later, petitioner the New York Times moved to have the records unsealed in connection with the preparation of an investigative news story. After a hearing, the Criminal Court granted the motion to unseal, reasoning that the records had been erroneously sealed in the first place, an error which could be subsequently corrected because “a court always has inherent power to render corrective judicial process”. In the court’s view, the misdemeanor charges should not have been originally sealed because the extradition proceeding did not end favorably to the defendant and that proceeding was indissolubly linked to the criminal charges, “they’re scrambled together”.
CPL 160.50 requires that “[ujpon the termination of a criminal action or proceeding against a person in favor of such person”, the court where, the action terminated “shall enter an order” directing, inter alia, that “all official records and papers” in the case relating to the prosecution be sealed, “and not made available to any person or public or private agency” (CPL 160.50, subd 1, par [c]). The dismissal of the instant criminal charges, on motion by the Assistant District Attorney and approved by the court, constituted a termination of the action in favor of the defendant. In consideration for defendant’s agreement to return to Massachusetts without recourse to formal statutory procedures (see CPL 570.50), the criminal charges were dismissed with prejudice and the record sealed, precluding further prosecution by the People for those offenses. This is a regular practice followed by the District Attorney, where the local crimes are not heinous in nature, to facilitate a defendant’s removal to another State where he faces substantially more serious charges. While the *893 transaction at issue is not specifically mentioned in the list of terminations defined as in favor of an accused (CPL 160.50, subd 2), it was tantamount to an election by the prosecutor not to prosecute the misdemeanor (CPL 160.50, subd 2, par [i]). This was a disposition in favor of the defendant, albeit not based on any finding as to the merit of the charges. “Consistent with the statute’s remedial purpose, is its intended application to any criminal action or proceeding terminated in favor of the person accused. The broad definition thus encompasses an expansive class of dispositions, including acquittal and various specified dismissals and vacaturs, regardless of whether premised on grounds unrelated to guilt or innocence” (Matter of Hynes v Karassik, 47 NY2d 659, 663).
The official record having been properly sealed, it may be subsequently made available only to one of the entities specified in the statute. Limited rights to seek unsealing are granted to a prosecutor, a law enforcement agency, a pistol licensing agency, and parole authorities (CPL 160.50, subd 1, par [d]). Manifestly, a newspaper is not one of the enumerated entities which may gain access to sealed documents. While courts retain inherent discretionary power to release sealed records, that power is to be exercised only in “extraordinary circumstances” when the interests of justice so require (Matter of Hynes v Karassik, supra, p 664; see, also, Matter of Anonymous, 95 AD2d 763). There are no special circumstances here which warrant the disclosure of the transcripts sought.
Nor does the refusal to divulge the information to the press abridge protections guaranteed under the First Amendment. This case is not one of attempted closure of a courtroom to the press. The proceedings below were open to the public and the press; a representative of the Times, if so inclined, could have attended and reported that which transpired. Trials and records should ordinarily be open to fullest public scrutiny, but only “so long as the case is not one in which preservation of secrecy in respect of the court records has been recognized by law” (Matter of New York Post Corp. v Leibowitz, 2 NY2d 677, 682). The right to speak and publish does not carry with it the unrestrained right to gather information (Zemel v Rusk, 381 US 1, 17). *894 The press cannot be denied access to any information within the public domain. But the Constitution does not “require government to accord the press special access to information not shared by members of the public generally” (Pell v Procunier, 417 US 817, 834; see, also, United States v Gurney, 558 F2d 1202, 1208-1209, cert den sub nom. Miami Herald Pub. Co. v Krentzman, 435 US 968). The statute with which we are concerned interdicts disclosure to “any person or public or private agency”. Since it does not deny the press access to sources of information available to members of the general public, it does not curtail First Amendment freedoms (Pell v Procunier, supra, p 835).
In denying petitioner’s application to open defendant’s records, we are necessarily guided by the purpose of CPL 160.50 and the objectives sought to be accomplished by the enactment. As noted by the Court of Appeals, “The statute serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation” (Matter of Hynes v Karassik, supra, p 662). The Governor’s memorandum contains the language: “This legislation is consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law.” (NY Legis Ann, 1976, p 409.) If after the termination of a criminal action in favor of an accused the communications media is to be routinely afforded access to sealed court records, these stated purposes and the legislative intent will be grievously frustrated.
Dudley, P. J., Hughes and Sullivan, JJ., concur.