OPINION OF THE COURT
Thomas B. Galligan, J.
WCBS-TV, WNBC-TV, WABC-TV and the New York Post *1104 have applied for permission to inspect and photograph certain still pictures that have been introduced into evidence at the trial of People v McCray. The application is opposed by the People and by defendant Antron McCray. Counsel for Salaam and Santana appeared but took no position on the record.
The above applicants seek to inspect and copy still photographs of John Loughlin, a victim of an assault in Central Park on April 19, 1989.
At the trial of the three defendants herein (there are three other defendants to be tried subsequently each of whom is charged with the same crimes) John Loughlin appeared and testified for the People. His testimony related the events preceding, during and subsequent to his assault. Several photographs vividly portraying the injuries to various parts of his body were offered and received in evidence and displayed to the jury.
The incidents which are the subject of this indictment have been constantly and extensively reported in the media. The trial itself is covered on a daily basis by a large and diverse group of persons representing the local, national and international media. In addition, sketch artists are in almost constant attendance. Video and audio coverage was not permitted.
The applicants essentially raise two arguments in favor of their request: first, the press enjoys a presumptive right of access to inspect and copy judicial. records, which can be overcome only by extraordinary circumstances, and second, no "extraordinary circumstances” sufficient to overcome the right of access have been articulated by the parties.
"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents. * * * The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen’s desire to keep a watchful eye on the workings of public agencies, see, e.g., State ex rel. Colscott v. Ring, 154 Ind. 621, 621-627, 57 N. E. 535, 536-538 (1900); State ex rel. Ferry v. Williams, 41 N. J. L. 332, 336-339 (1879), and in a newspaper publisher’s intention to publish information concerning the operation of government” (Nixon v Warner Communications, 435 US 589, 597-598, and cases cited therein).
Indeed, this commom-law right to inspect and copy judicial records, including physical evidence, is of such magnitude that "[w]hen physical evidence is in a form that permits inspection *1105 and copying without any significant risk of impairing the integrity of the evidence or interfering with the orderly conduct of the trial, only the most compelling circumstances should prevent contemporaneous public access to it.” (In re Application of National Broadcasting Co., 635 F2d 945, 952.)
Yet, this right "is not absolute.” (Nixon v Warner Communications, supra, at 598.) Rather, "the decision as to access to public records is one to be made by the trial court in light of the relevant facts and circumstances of the particular case, Id. at 598-99, 98 S.Ct. at 1312. The Watergate Court directs us to exercise 'an informed discretion . . . with a sensitive appreciation of the circumstances,’ but we are cautioned that exercising our responsibility 'does not permit copying on demand.’ Id., 603, 98 S.Ct. at 1314.” (In re Application of KSTP Tel., 504 F Supp 360, 361.)
Accordingly, in exercising such discretion, reference to the facts and circumstances of this case is pertinent. Significantly, the photographs in issue on this application do not depict defendants or other witnesses involved in criminal activity as perpetrators (cf., In re Application of CBS, 828 F2d 958). Rather, they portray the victim of a brutal assault and his injuries. These photos are in color and reveal extensive bruises which cover much of this person’s naked torso.
This circumstance, in itself, distinguishes the present case from that of Application of CBS (supra), relied upon by applicant. In that case, the media sought and was granted access to the deposition of an unindicted coconspirator who had testified on videotape because of illness. In granting the press access to the tape, the Second Circuit reasoned that the witness’s "situation is simply not analogous to, say, that of a victim of a slasher. So far as the content of [his] testimony is concerned, he is not an innocent bystander subject to public embarrassment solely because of the acts of others. See, In Re KSTP Television, 504 F.Supp. 360 (D. Minn. 1980) * * *. Rather, the circumstances in which he finds himself are solely the result of his criminal acts.” (In re Application of CBS, supra, at 961.)
Here, as in the hypothetical alternative posed by the Second Circuit, the photos depict the graphic results of a physical attack upon an innocent victim.
Further, the circumstances presented herein distinguish this case from In re Application of National Broadcasting Co. (supra), also relied upon by applicant. (The issues there de *1106 cided, "arose during the first of the so-called Abscam cases * * * [involving] criminal prosecutions of Members of Congress and other public officials on bribery and related charges arising out of an elaborate F.B.I. undercover ‘sting’ operation” [supra, at 947].) The evidence sought to be reproduced does not portray the actions of public officials — be they law enforcement personnel or defendants.
To the contrary, on these facts, as in Application of KSTP Tel. (supra, at 363), the access sought by the media pertains to information which, "even if of some value, is not the type of information which depicts, criticizes or causes the public to reflect on the workings of society’s institutions; it is not the type of information necessary to maintain informed consent for sustaining a free and democratic society. * * * In this case any additional information inherent in the video tape form can serve only to accent the morbid and lurid details of the crime”.
It is also worth noting that the subject application does not implicate First Amendment considerations. "All of the information in the [exhibits] has already been made available to the public and to the media in the course of an unrestricted public trial. The First Amendment requires no more.” (In re Application of KSTP Tel., supra, at 364; Matter of Hearst Corp. v Vogt, 62 AD2d 840.)
In balancing then, the competing interests in issue, I find that concern for the dignity of a crime victim, and indeed, principles of common decency, outweigh the negligible interests advanced in support of this application. Accordingly, in the exercise of discretion, the press will be permitted access to examine exhibits but will be denied the opportunity to reproduce any photographs depicting victims or otherwise pertaining to their injuries.