*334 OPINION OF THE COURT
Abraham G. Gerges, J.
Is an insanity acquittee entitled to have the court record sealed (CPL 160.50)? Is such an acquittee entitled to have potential employers disregard the arrest for employment purposes (see, CPL 160.60; Executive Law § 296 [16])? Is an insanity acquittee entitled to the return of the entire bail posted without reduction of the 2% charge (General Municipal Law § 99-m [1])? Can such an acquittee require the return of the vehicle used in the course of the crime (Vehicle and Traffic Law § 511-c [5] [a] [i])? The applicability of these and other statutes is determined by the issue of whether an insanity acquittee’s not guilty verdict is a termination in favor of defendant.
Movant/petitioner requests "unsealing” or, more precisely, a declaration that the records of indictment No. 538/78 were improperly sealed.
In February 1978, acquittee killed his wife and three children, one of whom was blind and "multiply handicapped”.* The incident received widespread publicity. As a result of a nonjury trial, acquittee was found "not guilty by reason of mental disease or defect” (see, CPL 300.10 [former (3) (d)]). The Clerk of this court then stamped all records sealed pursuant to CPL 160.50.
It is noted that acquittee was disbarred as a result of this incident and his recent attempts at reinstatement have been rejected. Acquittee has made a new life for himself and for his new family.
In 1997 movant /petitioner was retained by Random House to author a book regarding members of the Industrial Home for the Blind in the 1970’s. At that time, movant/petitioner was a "reporter and critic” for the Wall Street Journal and was aware of some of the underlying facts regarding the instant indictment and acquittee’s involvement with the Industrial Home for the Blind. In an effort to cull more "accurate” information about the occurrence, movant /petitioner went to the Clerk’s office attempting to examine the court file. Movant/petitioner was informed that the record was sealed and an application to "unseal” must be made. Such a motion/ petition was made "ex parte” to this court. The court informed movant/petitioner that the motion/petition must be served on *335 the acquittee. Movant /petitioner complied, and the acquittee opposes "unsealing”.
The moving papers /petition supplies no reason for unsealing other than a desire to research a book. The papers do claim that the court file was improperly sealed as insanity acquittees are not entitled to sealing of records under CPL 160.50.
Initially, the court must address the issue of whether movant / petitioner has standing to allege that the court records were improperly sealed.
Courts throughout the country have recognized "a general right” to inspect judicial records (Nixon v Warner Communications, 435 US 589, 597; People v McCray, 147 Misc 2d 1103, 1104). That right has been described as a common-law right of access to court records (Nixon v Warner Communications, supra, 435 US, at 598, 599; People v Burton, 189 AD2d 532, 535; People v Hodges, 172 Misc 2d 112, 117; People v Sullivan, 168 Misc 2d 803, 808; see also, Matter of Crain Communications v Hughes, 74 NY2d 626, 627; Matter of Newsday, Inc. v Sise, 71 NY2d 146, 153, n 4). There is also a qualified US Constitution First Amendment right of access to court files containing matters that are part of the record or were introduced into evidence at a trial (supra).
Thus, movant/petitioner seeks to exercise this common-law right or qualified First Amendment right. The notation on the file that the records are sealed pursuant to CPL 160.50 acts as a bar to the exercise of these rights.
As stated in Matter of Crain Communications v Hughes (supra, 74 NY2d, at 628), "a nonparty in the original proceeding * * * may * * * seek relief from the sealing order”.
The court finds that a person seeking to exercise either the right of common-law or First Amendment access to court records has standing not only to seek relief from the sealing order but to claim that the records were improperly sealed. It is the personal right of the person seeking access which is being affected by an "alleged” improper sealing.
The court will address whether CPL 160.50 mandates sealing of the judicial records of insanity acquittees.
CPL 160.50 (1) as it existed in 1978 required the sealing of all court records of all criminal actions which terminate "in favor” of an accused. Subdivision 2 (c) as it existed in 1978 read as follows:
"2. For the purposes of subdivision one of this section, a criminal action or proceeding against a person shall be considered terminated in favor of such person where * * *
*336 "(c) a verdict of complete acquittal was 'made pursuant to section 330.10 of this chapter”.
CPL 330.10 in 1978 read as follows:
"§ 330.10 Disposition of defendant after verdict of acquittal
"1. Upon a verdict of complete acquittal, the court must immediately discharge the defendant if he is in the custody of the sheriff, or, if he is at liberty on bail, it must exonerate the bail.
"2. Upon a verdict of acquittal by reason of mental disease or defect, the court must commit the defendant to the custody of the commissioner of mental hygiene, pursuant to section 330.20.”
CPL 160.50 (2) (c) did not state "a verdict of acquittal as defined in subdivision one of 330.10.” In other portions of the CPL, when the Legislature wished to limit the effect of a statute, it particularized the subdivision to which the statute applied. The omission of the "subdivision” indicates that any acquittal, including insanity acquittals under subdivision (2), would be included. However, CPL 160.50 (2) (c) did use the phrase "complete acquittal”. The word "acquittal” modified by the adjective "complete” is used only in subdivision (1) of CPL 330.10. Subdivision (2), the insanity acquittal, used the word "acquittal” without the adjective "complete”. This would indicate the exclusion of the insanity acquittals.
It is noted that with some slight variations, the same statutory ambiguity exists under the current statute.
The implications from a plain reading of the statute are contradictory.
An accused whose case was dismissed before trial or who was acquitted has no constitutional right to have court records sealed or withheld from public viewing (see, Matter of Charles Q. v Constantine, 85 NY2d 571, 575; People v Patterson, 78 NY2d 711, 715). The right to a sealing of court records is purely statutory (supra).
The function of the court in resolving statutory ambiguity is to "implement the will of the Legislature as expressed in its enactment” (People v Smith, 79 NY2d 309, 311; see also, People v Ryan, 82 NY2d 497, 502). The "core question” is what did the Legislature intend (People v Jackson, 106 AD2d 93, 96).
CPL 160.50 was enacted in 1976 (Matter of Joseph M., 82 NY2d 128, 131). Its purpose was "to ensure that the protections provided to exonerated accuseds be 'consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis *337 of an accusation, unless the charges were ultimately sustained in a court of law’ (Governor’s Approval Mem, 1976 McKinney’s Session Laws of NY, at 2451)” (supra, at 131).
The statute has "the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his [or her] having once been the object of an unsustained accusation. That detriment to one’s reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions” (Matter of Hynes v Karassik, 47 NY2d 659, 662).
Did the Legislature intend to give the protection of the "presumption of innocence” to an insanity acquittee? Are the "laudable goals” of the statute applicable to accuseds who were found "not guilty by reason of mental disease or defect”? The court has found no legislative history on this issue.
Persons acquitted of a crime by reason of mental disease or defect constitute an "exceptional” (Matter of Torsney, 47 NY2d 667, 672 [mental hygiene]) or "special” class (Jones v United States, 463 US 354, 370; Matter of Oswald N., 87 NY2d 98, 105). The effect of such an acquittal is limited (People v Lally, 19 NY2d 27, 33). In contrast to other acquittees, an insanity acquittee is kept in the custody of the State after being found "not guilty” (supra; see also, People v Lancaster, 69 NY2d 20, 28-29).
Insanity acquittees are individuals "who have admittedly committed or have been proven to have committed what would normally be a crime, but who have been relieved of the penal sanctions of criminal liability as a result of their success in convincing a Judge or jury that they were insane. It has been forcefully said, and with much logic, that '[although acquittal represents a lack of criminal culpability, and therefore makes punitive treatment inappropriate, reliance on the insanity defense is tantamount to an admission that the person performed the criminal act in question and has therefore been dangerous to the community’ ” (People ex rel. Henig v Commissioner of Mental Health, 43 NY2d 334, 338). An individual acquitted by reason of mental disease and defect is not a person who was charged with an "unsustained accusation” (Matter of Hynes v Karassik, supra, 47 NY2d, at 662), but is a person who committed "what would normally be a crime” (People ex rel. Henig v Commissioner of Mental Health, supra, 43 NY2d, at 338; see also, Foucha v Louisiana, 504 US 71, 76). The insanity *338 defense is a reflection of society’s compassionate belief that such a person not be criminally punished (see, People v Lancaster, supra, 69 NY2d, at 28). Such a person, however, does not escape complete punishment, but is kept in society’s custody, albeit in a different setting (see, CPL 330.20).
In sum, "the defense of mental disease or defect, also may be properly considered a complete defense in the sense that, if believed, it would relieve the defendant of responsibility for his otherwise criminal conduct, it is nevertheless a defense of a unique and specific nature — the defense of mental disease or defect does not have the potential for eliminating a 'needless or unfounded prosecution’ ” (People v Lancaster, supra, 69 NY2d, at 28).
It is the court’s opinion that the Legislature did not intend to extend the "presumption of innocence” to a person acquitted as a result of mental disease or defect. Such a person actually committed acts which are crimes and are deserving of punishment. Such persons are not set free to roam in society, but are kept in custody until they are no longer "dangerous” to themselves or to the public. The charges against such persons are not "unfounded”, frivolous, or unproven.
The court holds that insanity acquittees are not statutorily entitled to have their records sealed. They are not persons whose criminal actions have been terminated "favorably” under CPL 160.50.
The court declares that indictment No. 538/78 has been improperly sealed.
The court directs that the court file be "unsealed” and remain open to the public.
The court notes that if the records had been properly sealed, the court could not unseal the records (People v McLoughlin, 104 AD2d 320, affg on opn at 122 Misc 2d 891; compare, Globe Newspaper Co. v Pokaski, 868 F2d 497; Commonwealth v Doe, 420 Mass 142, 648 NE2d 1255).
Acquittee shall have the right within 10 business days from service of this order to make a motion to seal any records claimed covered by the psychiatrist/patient privilege or doctor/ patient privilege. The Court Clerk is directed not to permit any examination of the court file for a period of 10 business days after service of this order. If such a motion is made, the Clerk shall not permit examination of any records subject to such motion. All other records shall be available to the public.

 The facts are gleaned from the moving papers and not from the "sealed” court file.